192 P.3d 374 (2008)
Isidro LAGUNA, a single person, and Gerald R. Tarutis, as Guardian Ad Litem for J.I.L.V., a minor child, et al, Respondents,
v.
WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, a governmental entity, Appellant,
Lawrence M. Barnett and Jane Doe Barnett, husband and wife; GTL Enterprises, Inc., a Washington corporation; Douglas A. Newcomb and Jane Doe Newcomb, husband and wife; Central Refrigerated Service, Inc., a foreign corporation; Jeffrey P. Dehart and Jane Doe Dehart, husband and wife; Majestik Trucking, Inc., a Washington corporation; Khatra S. Sukminder and Jane Doe Sukhminder, husband and wife; Western Ports Transportation, Inc., a Washington corporation; Emigdio Lopez, a single person; Ford Motor Company, a foreign corporation; Robert E. Harvill and Jane Doe Harvill, husband and wife; Domino's Pizza Co., Inc., Defendants.
No. 60072-9-I.
Court of Appeals of Washington, Division 1.
June 23, 2008.
Publication Ordered August 19, 2008.
Rene David Tomisser, Jennifer Smith Meyer, Office of the Attorney General, Olympia, WA, for Appellant.
Terry P. Abeyta, Attorney at Law, Gregory Scot Lighty, Abeyta Nelson PC, Yakima, *375 WA, James Steven Rogers, The Law Offices of James S. Rogers, David Lawrence Hennings, Wilson Smith Cochran Dickerson, Martha E. Raymond, Providence Health & Services, David Mark Soderland, Dunlap & Soderland, P.S., Seattle, WA, for Respondent.
ELLINGTON, J.
¶ 1 The State's duty to maintain roads in a reasonably safe condition does not include the duty to prevent ice from forming on the roadway. In this case, it is undisputed that the State lacked notice that ice had formed at the time and location of an accident. The court erred by denying the State's motion for summary judgment. We reverse and remand for entry of an order granting the State's motion.

BACKGROUND
¶ 2 At approximately 6:40 a.m. on January 23, 2004, a number of vehicles were involved in an accident on eastbound Interstate 90 near Rye Grass Summit, between Ellensburg and Vantage. Isidro Laguna, a passenger in one of the vehicles, sustained serious injuries. Black ice covered both eastbound lanes of the freeway at the time of the accident.
¶ 3 Although neither Washington State Department of Transportation (WSDOT) personnel nor a Washington State Patrol trooper patrolling the area had observed ice before the accident, road and weather conditions had been favorable to ice formation for some time. WSDOT employees noted air and ground temperatures below freezing and a dense fog in the area. The weather forecast for the area predicted a 60 percent probability of ice formation; however, the forecast was not localized enough to apply it to a particular section of the roadway.[1]
¶ 4 According to meteorological experts, icing would have been rapid. One expert stated that the transition from a bare and wet roadway to one covered by black ice could occur in as little as a few minutes under the weather conditions existing at the time of the accident.
¶ 5 WSDOT has a policy of applying anti-icing chemicals when conditions warrant it, even if ice is not yet formed. WSDOT employees testified they applied anti-icing chemicals to one of the eastbound lanes prior to the accident. WSDOT records, however, indicate that the employees did not apply anti-icer until after the accident occurred. In any case, both lanes were covered with ice by the time of the accident.
¶ 6 Laguna sued a number of defendants, including the State of Washington. He alleged the State was negligent in failing to act to prevent ice from forming on the roadway. The State moved for summary judgment, which the court denied. We granted discretionary review. The usual standard of review for summary judgment applies.[2]

DISCUSSION
¶ 7 The question here is whether the State has a duty to predict and prevent ice from forming on the roadways when it has notice of conditions that make ice formation probable. If not, it was entitled to summary judgment.
¶ 8 The State has a duty to maintain its roads so that they are reasonably safe for ordinary travel.[3] "That duty is conditional, however, for it arises only when the State has notice of, and time to correct, the hazard in question."[4] Accordingly, the State "must have (a) notice of a dangerous condition which it did not create, and (b) a reasonable *376 opportunity to correct it before liability arises for negligence from neglect of duty to keep the streets safe."[5]
¶ 9 There is no evidence, and none of the parties contends, that the State had notice that there was ice on the road where and when the accident occurred. Laguna's claim against the State rests on the contention that it had a duty to use anti-icing chemicals to prevent the ice from forming. Duty is a question of law, which we review de novo.[6]
¶ 10 Under similar facts, Division Two of this Court held the State has no duty to prevent ice from forming. In Leroy v. State, two cars collided on an icy bridge. Leroy argued the State was liable because it had actual notice of the icy condition "due to weather forecasts and the Department of Transportation's ... knowledge that bridges are among the first areas to develop ice."[7] Leroy presented evidence showing that bridges are more susceptible to ice than other areas; that weather forecasts predicted freezing temperatures; that this was a predictable icing situation; and that the State had anti-icing chemicals available to it. But because this evidence failed to show the State had notice of ice at the time and place of the accident, Division Two held the trial court properly granted the State's motion for summary judgment.[8]
¶ 11 This case differs from Leroy in that the facts here gave the State greater cause to anticipate that ice would form. State employees personally observed below-freezing air and ground temperatures and a dense and "leaking" fog, conditions they testified led them to apply anti-icing chemicals to parts of the roadway. But as in Leroy, this evidence does not establish the State had notice of existing ice at the time and place of the accident before the accident occurred. Thus, as in Leroy, "the trial court could not properly have submitted this evidence against the State to the jury."[9]
¶ 12 Laguna argues that the dangerous condition here was not ice, but "moisture combined with below-freezing air and ground temperatures."[10] But these conditions do not make road travel treacherous. Moisture and freezing temperatures are only potentially dangerous. Essentially, Laguna argues the State had a duty to act because the facts known to it made the formation of ice foreseeable. But foreseeability of harm does not create the duty to prevent it.[11]
¶ 13 There is a difference between liability based on knowledge that a dangerous condition actually exists and knowledge that a dangerous condition might, or even probably will, develop. No Washington case has held that the State has a duty to act when weather conditions exist that are likely, or even certain, to produce icy roads.
¶ 14 The State offers a compelling argument against departing from precedent to establish liability for failure to prevent ice formation. Freezing weather exists throughout much of the State for a good portion of the year. These conditions do not necessarily lead to ice on the roadway. Here, for example, the same conditions that produced ice before the accident had prevailed for days beforehand, without ice formation. Unfortunately, weather forecasts cannot pinpoint when or where ice will form, and it can form within minutes. If the fact that ice is predictable at some (uncertain) point were enough to create a duty to prevent it, the State would be required to apply anti-icing chemicals to hundreds of miles of roadway *377 whenever moisture and freezing temperatures exist.
¶ 15 Domino's Pizza, one of the State's codefendants, argues that even if the State owes no duty absent actual notice of existing ice, summary judgment was inappropriate. Domino's contends that whether WSDOT employee Denis Newcomb actually observed ice, despite his testimony to the contrary, is a material fact particularly within the knowledge of the State's witness. Domino's contends Newcomb's credibility was impeached by evidence the WSDOT unexpectedly offered him a long sought-after permanent position on the eve of his deposition.
¶ 16 In Balise v. Underwood, the Supreme Court held that where the movant's evidence is impeached, an issue of credibility is present, and the court should deny summary judgment.[12] But more recently, the Supreme Court has clarified that, while a court should not resolve a genuine issue of credibility at a summary judgment hearing, "[a]n issue of credibility is present only if the party opposing the summary judgment comes forward with evidence which contradicts or impeaches the movant's evidence on a material issue."[13] The court further found:
"[T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and that the opposing party may not merely recite the incantation, `Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."[[14]]
¶ 17 Impeachment of a witness does not establish the opposite of his testimony as fact. Assuming Newcomb's testimony were impeached, there is still no evidence of actual notice. This is insufficient to raise an issue of material fact. The State was entitled to summary judgment.
¶ 18 We reverse and remand for entry of an order granting the State's motion for summary judgment.
¶ WE CONCUR: SCHINDLER, C.J., and LAU, J.
NOTES
[1] The forecast covered the area between Elk Heights and Vantage, including the Rye Grass Summit.
[2] This court reviews summary judgment decisions de novo, viewing the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Anderson v. State Farm Mutual Ins. Co., 101 Wash.App. 323, 329, 2 P.3d 1029 (2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c).
[3] Keller v. City of Spokane, 146 Wash.2d 237, 249, 44 P.3d 845 (2002).
[4] Leroy v. The State of Washington, 124 Wash. App. 65, 68-69, 98 P.3d 819 (2004) (citing Wright v. Kennewick, 62 Wash.2d 163, 167, 381 P.2d 620 (1963); Bird v. Walton, 69 Wash.App. 366, 368, 848 P.2d 1298 (1993)).
[5] Nibarger v. Seattle, 53 Wash.2d 228, 229, 332 P.2d 463 (1958). See also Bird, 69 Wash.App. at 368, 848 P.2d 1298 (applying Nibarger rule to counties and state). Notice may be actual or constructive. Nibarger, 53 Wash.2d at 230, 332 P.2d 463. Only actual notice is at issue here.
[6] Leroy, 124 Wash.App. at 68, 98 P.3d 819.
[7] Id. at 67, 98 P.3d 819 (internal quotation marks omitted).
[8] Id. at 70, 98 P.3d 819.
[9] Id.
[10] Br. of Resp't at 40.
[11] Halleran v. Nu West, Inc., 123 Wash.App. 701, 717, 98 P.3d 52 (2004) ("Foreseeability limits the scope of a duty, but it does not independently create a duty.").
[12] 62 Wash.2d 195, 200, 381 P.2d 966 (1963). A fundamental issue in that case was whether a driver in an accident was acting within the course of his employment at the time. The driver's testimony denying that fact was impeached because he admitted in his answer that he was acting in the course of his employment and had made a claim for worker's compensation. The driver then abandoned his claim and amended his answer to deny his status at the time of the accident. On deposition, he and his wife also expressed fear that he would lose his job. Id. at 198, 381 P.2d 966.

This case is unlike Balise. There, the driver's initial answer and compensation claim provided factual evidence that undermined his later testimony. Here, there is no evidence to refute Newcomb's testimony that he observed no ice on the road.
Additionally, we have since questioned Balise's holding where impeachment evidence relied upon by the plaintiff will not carry the plaintiff's burden of proof at trial. See Kamla v. The Space Needle Corp., 105 Wash.App. 123, 129-30, 19 P.3d 461 (2001) ("Balise appears to be inconsistent with more recent cases regarding the proper standard for granting motions for summary judgment."), overruled in part on other grounds, 147 Wash.2d 114, 52 P.3d 472 (2002). Since a defendant without the burden of proof may move for summary judgment based on nothing more than the absence of evidence to support the plaintiff's case, the nonmoving party should not be able to escape summary judgment simply by impeaching the defendant's witness without providing proof sufficient to prove the plaintiff's case. See Young v. Key Pharms. Inc., 112 Wash.2d 216, 225 n. 1, 770 P.2d 182 (1989).
[13] Howell v. Spokane & Inland Empire Blood Bank, 117 Wash.2d 619, 626, 818 P.2d 1056 (1991).
[14] Id. at 627, 818 P.2d 1056 (quoting Amend v. Bell, 89 Wash.2d 124, 129, 570 P.2d 138 (1977)).