# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JAMES C. FUDA, individually and as
personal representative of the estate of
AUSTIN FUDA; TYLER FUDA, and
KELEIGHN FUDA, individually and as
statutory beneficiaries; DORIANNE
BEAUPRE, individually and as personal
representative of the estate of HUNTER
BEAUPRE; and CHAD BEAUPRE,
individually,

Appellants,

v.

KING COUNTY, a municipal corporation;
LONI MUNDELL, a single person, JOHN
and JANE DOE EMPLOYEES 1-25,
husband and wife, a marital community;
DOE COMPANIES 1-25, companies doing
business in the state of Washington,

Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 74033-4-I
(consolidated with
No. 74630-8-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: October 9, 2017

APPELWICK, J. — Fuda challenges the application of the discretionary immunity doctrine. The doctrine prevented the jury from considering whether the County should be liable for the deaths of two children because it negligently failed to install a guardrail at the site of the fatal crash. Fuda also challenges the imposition of sanctions. We affirm.

## FACTS

On November 7, 2008, 16 year old Loni Mundell was driving 13 year old Austin Fuda and 2 year old Hunter Beaupre on Green River Road in King County.

As the road curved, she lost control of the vehicle, crossed the other traffic lane, and left the road. The vehicle traveled down an embankment and into the Green River. Mundell survived, but Fuda and Beaupre died.

Beaupre and Fuda's estates brought separate claims for wrongful death against King County (County) and Mundell, among others. Their claims were consolidated.[1] The County moved for summary judgment based on discretionary immunity.

The County and its engineers use a "priority array" system to rank and determine which county roads should receive guardrails. In 1994, County engineer Norton Posey visited the site of the accident. He measured the width of the shoulder to be 10 feet. Based on the 1993 King County road standards, a guardrail was therefore not warranted at the accident site. Because guardrails were placed on other areas of Green River Road in 1990 and 1994, Green River Road was removed from the priority array at Posey's direction. In its motion for summary judgment, the County claimed that the decision to remove the accident site from its guardrail priority array program was entitled to discretionary immunity.

The trial court held that "King County's decision to remove the Green River Road from King County's guardrail priority array program is entitled to discretionary immunity." Any guardrail evidence was therefore excluded. Fuda's remaining negligence claims were that the County was negligent for (1) allowing trees to overhang the roadway, (2) failing to sweep wet leaves, (3) failing to place warning

---

[1] We refer to the appellants collectively as "Fuda."

signs prior to the curve, (4) striping the road with substandard lane width, and (5) constructing the roadway with a soft shoulder. The jury returned verdicts finding both the County and Mundell[2] not negligent. Fuda appeals.[3]

## DISCUSSION

Fuda makes five arguments. First, he argues that the trial court erred in granting discretionary immunity to King County for its decision not to install a guardrail at the accident site. Second, he contends that the trial judge misinterpreted previous summary judgment orders regarding discretionary immunity. Third, he assigns error to the jury instructions. Fourth, he argues that the trial court erred in imposing sanctions. Fifth, he argues cumulative error.

### I. Discretionary Immunity

Fuda first argues that the trial court erred in granting the County's motion for summary judgment regarding all guardrail evidence. Fuda contends that this was error, because Posey's measurements and removal of the road from the priority array were an operational function, not a policy matter, and therefore not within the County's discretionary immunity. The decision to remove the area in question from the priority array program was supervised by Posey. He removed the area from guardrail priority after a field visit that showed that the shoulder at the accident site was wider than 10 feet. Under the program's standards the 10

---

[2] Mundell argues that the jury's special verdict finding Mundell not negligent precludes any contributory negligence arguments on remand. But, because we affirm, we need not address whether Mundell's negligence would be at issue in the event of remand.

[3] Although it prevailed at trial, King County also appealed various trial court rulings. However, neither King County nor Mundell assigns any error in their briefs. Therefore, we do not address the rulings appealed by King County.

foot wide shoulder meant that the road did not warrant placement of guardrail. The trial court ruled that this decision was entitled to discretionary immunity.

When reviewing a summary judgment order, we engage in the same inquiry as the trial court. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400, 406 (1999). Summary judgment is proper when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Id. All facts and reasonable inferences are considered in the light most favorable to the nonmoving party. Id. Questions of law are reviewed de novo. Id.

Our Supreme Court explained the nature of discretionary immunity in Evangelical United Brethren Church of Adna v. State, 67 Wn.2d 246, 407 P.2d 440 (1965). The Evangelical court noted that "in any organized society there must be room for basic governmental policy decision and the implementation thereof, unhampered by the threat or fear of sovereign tort liability." Id. at 254. In other words, " 'it is not a tort for government to govern.' " Id. at 253 (quoting Dalehite v. United States, 346 U.S. 15, 57, 97 L. Ed. 1427, 73 S. Ct. 956 (1953) (Jackson, J., dissenting)).

Holding that it is necessary to draw the line between "truly discretionary and other executive and administrative processes," the Evangelical court announced a four factor test to determine when discretionary immunity applies:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and

expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

Id. at 255. The court held that "[i]f these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom." Id. Our Supreme Court has also held that discretionary immunity is a narrow doctrine, limited to " 'discretionary' " acts, not " 'ministerial' " or " 'operational' " ones. Taggart v. State, 118 Wn.2d 195, 214, 822 P.2d 243 (1992) (quoting Evangelical, 67 Wn.2d at 254-55). In order for a decision to qualify as discretionary, the State must show that the decision was the outcome of a conscious balancing of risks and advantages. Id. at 214-15.

The outcome of the discretionary immunity claim turns on the application of the Evangelical factors. The first factor asks whether the decision was part of a basic governmental program. Evangelical, 67 Wn.2d at 255. As Posey stated in a declaration, "The goal of King County's Guardrail Priority Program is to use the yearly money allocated by the King County Council to construct guardrail[s] at as many locations within the County as possible with the highest need first." Creating and maintaining road safety features is a basic governmental program. Installation of guardrails was part of such a program. We hold that the first factor is therefore satisfied.

As to the second factor, whether the act is essential to effectuate the policy, having a priority system that identifies areas of most need is part of allocating a limited budget. Without a ranking system that accounts for key safety factors, decision makers would be left to guess at the areas of most need, or, alternatively, would not be able to adequately identify need at all. The prioritization of areas of need in the county is essential to the realization of the guardrail safety program.

Third, questions of policy judgment are covered by discretionary immunity only if made by high level executives as a result of conscious balancing of risks and advantages. See Taggart, 118 Wn.2d at 215. Fuda acknowledged that the engineer who created the priority array, County Road Engineer Louis Haff, was a "high level executive." The array determines priority of projects based on comparative factors aimed at identifying the most urgent needs.

But, Fuda asserts that the most important party is Posey, because he measured the area at issue, determined that it did not need a guardrail under the County standards, and removed it from the array. Fuda does not allege that Posey or the County negligently measured the roadway, nor does Fuda allege that the County was negligent in creating the County road standards. Fuda alleges that the County was negligent for removing the roadway from the priority array.[4] But,

---

[4] In a declaration, Posey stated that, even if he did not remove the location from the priority array in 1994, the guardrail's position in the priority array would have meant that guardrail would not have been installed at the location until 2014 or 2015. In his briefing, Fuda does not make any argument contesting this fact. Nor does he point to any portion of the record that contradicts Posey's statement. The record supports the trial court's conclusion that the uncontroverted evidence is that Fuda has not established cause in fact. Therefore, even if we held that discretionary immunity does not apply, reversal on the guardrail issue would not be warranted, because Fuda has not established cause in fact.

Posey removed the section of road at issue based on County road standards which stated that a road with a shoulder wider than 10 feet did not need guardrail. Posey was simply providing data for the algorithm that implemented the priority array. See Jenson v. Scribner, 57 Wn. App. 478, 483, 789 P.2d 306 (1990) (holding that "data collection is merely a function of planning and is, thus, a part of the State decisionmaking process. It is not the implementation of a decision. As a result, it is a discretionary act for which there is immunity." (citation omitted)). Fuda does not contend that Posey was negligent in measuring the accident site or that the algorithm itself is defective. Thus, Fuda's claim is either to the County's policy choice to use a priority array or its budget decision for guardrail implementation. Such decisions are the kind of conscious balancing of risks and advantages by high level executives that discretionary immunity applies to. See Taggart, 118 Wn.2d at 214-15. The act or omission alleged—the failure to install a guardrail—required the exercise of basic policy judgment. The third factor is satisfied.

The last factor—whether the County had authority to make the decision in question—is not at issue here. Id. at 255. Therefore, each of the Evangelical factors is satisfied. The trial court correctly applied the doctrine of discretionary immunity.

We have previously reached a similar conclusion and held that discretionary immunity applied to a guardrail claim. See Avellaneda v. State, 167 Wn. App. 474, 484-85, 273 P.3d 477 (2012). The State used a priority array similar to the County's. See id. at 476-77. The court analyzed the Evangelical factors, and

7

determined that discretionary immunity applied to the failure to construct a barrier based on the State's priority array system. Id. at 482-84.

Fuda contends that we reached the opposite result in Ruff v. County of King, 72 Wn. App. 289, 865 P.2d 5 (1993), rev'd on other grounds, 125 Wn.2d 697, 867 P.2d 886 (1995), and that it should control over Avellaneda.[5] In Ruff, the County argued that its guardrail priority array shielded it form liability due to discretionary immunity. Id. at 294. Applying the Evangelical test, the court disagreed:

> Here, King County has not demonstrated that its guardrail program fits within this exception. Unlike Jenson, whose median barrier installation program derived from the policy making of the transportation commission and the Legislature, King County has not established factually that its guardrail installation program is anything more than a routine administrative matter. The County attributes the program's initiation to Haff's efforts and indicates that the King County Council authorized the annual budget. There is no evidence, however, showing that the council had a specific objective in mind or paid particular attention to this project. Funding for road improvements is not the equivalent of exercising a considered policy decision as to one specific guardrail installation. There is no indication that the staff could not change the priority of the projects on the list or that continued funding of the program to complete this project was assured. Nor does the evidence establish that Haff or the special engineer he hired was a "truly executive level" personnel. Therefore the creation and implementation of its guardrail prioritization program does not, under these facts, immunize it from suit.

Id. at 296.

Fuda argues that his claim is akin to Ruff's in that the failure to install a guardrail is merely a component of his claim that the County was negligent in its duty to provide reasonably safe roads. But, discretionary immunity turns on

---

[5] Avellaneda, 167 Wn. App. 474, did not cite Ruff in its analysis.

whether the facts of this case ultimately satisfy the Evangelical factors.[6] In Ruff, the County did not present the evidence necessary to support the Evangelical factors.[7] Here, they do. Fuda was not entitled to present the absence of the guardrail as a basis for negligence. He was, however, entitled to present all of the other alleged negligent acts or omissions. The jury rejected the claim that any of those acts or omissions caused the deaths.

The trial court did not err in granting the County's motion for summary judgment based on discretionary immunity.

## II. Orders in Limine

Fuda assigns error to the trial court's orders in limine that excluded certain evidence. He argues that it misinterpreted the scope of previous trial judge's rulings regarding guardrail evidence at trial. We review the grant or denial of a pretrial motion to exclude evidence for an abuse of discretion. See Douglas v. Freeman, 117 Wn.2d 242, 255, 814 P.2d 1160 (1991).

---

[6] In his reply brief, Fuda argues that application of the Evangelical factors to the failure to install a guard rail is not warranted. He contends that these factors are not relevant, because his overarching claim is not that the County negligently failed to install a guardrail, but that the County negligently failed to maintain the road in a safe condition. But, he nevertheless stresses that reversal is warranted under Ruff, where the court applied the Evangelical factors. Thus, Fuda effectively claims that the priority array decision should not be subject to the Evangelical factors, while also relying heavily on a case where the court applied the Evangelical factors to a priority array. We do not find this contention persuasive.

[7] On review, our Supreme Court reversed the Court of Appeals decision in Ruff, but on the grounds that Ruff had not established that the County was negligent in maintaining the roadway. See Ruff, 125 Wn.2d at 706-07. The Supreme Court explicitly declined to address the Court of Appeals' discretionary immunity analysis. Id. at 707.

Judge Bill Bowman[8] granted the County's summary judgment motion regarding guardrail claims. That order stated:

> 1. King County's decision to remove the Green River Road from King County's guardrail priority array program is entitled to discretionary immunity.
>
> 2. Norton Posey's shoulder measurements constitute data gathering which is part of the decision making process. Accordingly it is also entitled to discretionary immunity.
>
> 3. To the extent Mr. Posey's actions could be characterized as implementing the priority array program, the undisputed testimony is that the guardrail still would not have been installed at the time of this incident given its position in the array.
>
> 2. [sic] For these reasons, Defendant King County's Motion for Summary Judgment regarding Plaintiffs' guardrail claims is GRANTED.

Moreover, Judge Bowman incorporated his oral ruling, which stated in part:

> The kind of decisions that would be outside the discretionary immunity would be negligent implementation of the program itself, which is a very different thing than determining what is included and what is not included.
>
> And so the decision of Mr. Posey to evaluate and not to include this particular roadway in the array for construction of the guardrail I think is very much the same type of calculation that was made in the Avellaneda case, and I think is subject to the same discretionary immunity that Highway 512 was in Avellaneda. And, therefore, I will grant King County's motion with regard to the guardrail construction.

Later, in an order denying reconsideration, Judge Bowman clarified these rulings as follows:

> To the extent the Plaintiffs' [sic] seek clarification, the issues before the Court were whether the County was entitled to discretionary immunity for its decision in 1994 to remove this

---

[8] For clarity, we refer to the two judges, Judge Bowman and Judge Tanya Thorp, by their names.

accident site from its priority array and whether the data gathering process that supported that decision was entitled to discretionary immunity. The Court addressed both of those issues in the order. No other issues were before the Court.

Judge Tanya Thorp presided over trial. Fuda argues that two of her orders in limine used an erroneously broad interpretation of Judge Bowman's prior summary judgment order.

A. Order in Limine Six

First, Fuda argues that Judge Thorp erred in granting motion in limine six. That decision excluded any references to guardrails in three specific time periods: 1988-1994, 1994, and 1994-November 7, 2008. Fuda contends that, because Judge Bowman's summary judgment order related to the 1994 decision to remove the site from the priority array, references to guardrails for any time periods besides 1994 were not barred by that order. Judge Bowman's order referenced the year 1994 only to identify when Posey's decision occurred. The jury was well aware of the fact that no guardrail was in place at the time of the accident. Fuda wished to address whether the County had a duty to have it in place. The discretionary immunity ruling resolved both whether a guardrail should have been in the array and whether it should already have been in place. Fuda's argument that the order was more limited is unfounded. The trial court did not abuse its discretion in granting motion in limine six.

B. Order in Limine 13

Fuda also argues that the trial court erred in granting motion in limine 13. That order granted the County's motion and limited Toby Hayes's testimony

preventing him from discussing the probability of death as a result of vehicle hypothetically impacting a guardrail. Hayes' declaration opined that if a guardrail had been present at the site, serious injuries would have been avoided. The trial court's reasoning for granting motion in limine 13 stated "See ruling on motion number 6."

For the same reasons that the trial court did not abuse its discretion in granting motion in limine 6, it did not abuse its discretion in granting motion in limine 13. If any references to guardrails were excluded from trial, Hayes's testimony on the likelihood of injuries upon impact with a guardrail necessarily had to be excluded. The trial court did not abuse its discretion in excluding all references to guardrails, and therefore did not abuse its discretion in excluding Hayes's testimony about the likelihood of injury upon an impact with guardrails.

III.   Jury Instructions

Fuda argues that the jury instructions were erroneous. He primarily assigns error to the jury instructions' omission of guardrails, which was a result of the trial court's discretionary immunity ruling. As a result of this omission, he contends that misstated the law and prevented Fuda from fully arguing his theory.

Whether to give a certain jury instruction is reviewed for abuse of discretion. Fergen v. Sestero, 182 Wn.2d 794, 802, 346 P.3d 708 (2015). The propriety of a jury instruction is governed by the facts of the particular case. Id. at 803. Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and, when read as a whole, properly

inform the trier of fact of the applicable law. Id. Legal errors in jury instructions are reviewed de novo. Id.

### A. Jury Instruction 14

Fuda assigns error to jury instruction 14. That instruction stated that Fuda's negligence claim was based on the County allowing trees to overhang the road, failure to sweep wet leaves, failure to place warning signs, the lane width, and the type of shoulder. But, Fuda argues that it should have mentioned failure to install a guardrail or barrier because this could more completely describe the basis of his claim. Whether instruction 14 was erroneous therefore turns on whether the order in limine that barred mentioning of guardrails was erroneous. And, as discussed above, it was not. Therefore, jury instruction 14 was not erroneous.

### B. Jury Instruction 15

Modeled after 6A Washington Practice: Washington Pattern Jury Instructions: Civil 140.01, at 59-61 (6th ed. 2012) (WPI), jury instruction 15 stated that the county has a duty to exercise ordinary care in the construction and maintenance of its roads:

> Counties have a duty to exercise ordinary care in the design, construction, maintenance, and repair of their public roads to keep them in a reasonably safe condition for ordinary travel. This duty is owed to all persons whether those persons are negligent or fault free.
>
> A county does not have a duty to (1) anticipate and protect against all imaginable acts of negligent drivers, (2) update every road and roadway structure to present-day standards, or (3) make a safe road safer.

Instead of the second paragraph that discusses limitations on the County's duty, Fuda proposed that the instruction also clarify the specifics of the County's duty:

> . . . This duty is owed to all persons whether those persons are negligent or fault free.
>
> This duty includes the duty to eliminate an inherently dangerous or misleading condition. The duty requires the County to reasonably and adequately warn of a hazard and maintain adequate protective barriers where such barriers are shown to be practicable and feasible.
>
> If you find the Green River Roadway was inherently dangerous or misleading, you must determine the adequacy of the corrective actions under all of the circumstances. If you determine the County's corrective actions were adequate, then you must find the County has satisfied its duty to provide reasonably safe roads.

Fuda contends that failure to give this proposed instruction was erroneous, because the instruction given focused on limitations on the county's duty, but did not mention the county's affirmative obligations. Fuda did not present a proper alternative instruction. It interjected the duty to maintain protective barriers which was an end run on the discretionary immunity ruling. The court was correct to reject Fuda's proposed instruction, because a guardrail is a barrier. And, Fuda does not demonstrate that the pattern instruction given was a misstatement of the law. His argument is that the instruction was one-sided. But, jury instructions are heavily dependent on the facts of the case, and within the trial court's discretion. Fergen, 182 Wn.2d 802-803. On these facts, the trial court did not abuse its discretion giving instruction 15.

## C. Jury Instruction 16

Fuda assigns multiple errors to jury instruction 16. This instruction stated that, in order to find the county negligent, the jury must find that the county had notice of an unsafe condition.[9]

First, he contends that the explanation of notice was in error. The instruction stated that a county is deemed to have notice if, under ordinary care, it should have discovered the condition. But, Fuda contends that the instruction should have also informed the jury of scenarios where no notice is required, such as when the government itself created the unsafe condition. But, the comment to the pattern instruction that this instruction was modeled after, WPI 140.02, states that no such special notice instruction is required when the condition was created by the county. See WPI 140.02 authors' cmts at 64. This is because WPI 140.01, which instruction 15 was modeled after, adequately covers such situations by stating that the county has a duty to exercise ordinary care in the construction and maintenance of its roads. Id. We conclude that the trial court did not abuse its discretion by not giving the additional special instruction on notice.

Fuda also contends that instruction 16 was erroneous, because it did not include the County's duty to maintain protective barriers where feasible. But, again, for the same reason that the trial court did not err in excluding references to

---

[9] While the instruction did not single out any single condition of which the County must have had notice, Fuda's negligence claims involved: (1) allowing trees to overhang the roadway, (2) failure to sweep wet leaves, (3) failure to place warning signs at the curve, (4) striping the road with substandard lane width, and (5) constructing the roadway with a soft shoulder.

barriers, it did not err in excluding the county's duty to maintain barriers in instruction 16.

Fuda's final alleged error in instruction 16 is that it included two sources of inapplicable law. It included a statement that a county cannot be negligent if it only knew that an unsafe condition might, or even probably, develop. This language comes from the holding in Laguna v. State, 146 Wn. App. 260, 265, 192 P.3d 374 (2008), that moisture and freezing temperatures are only potentially dangerous conditions. Fuda argued to the trial court that the accumulation of leaves and wet debris is distinguishable from the moisture and freezing temperatures that were present in Laguna. Therefore, he claimed, it was not merely a potential danger, but an existing danger. But, we believe that this condition is sufficiently analogous to the moisture and freezing temperatures that warranted this instruction in Laguna. It is a seasonal variation on the roadway surface that may or may not occur at various times. But, once the ice forms, the risk is there to be discovered, just as it is when the leaves fall and accumulate. Therefore, akin to Laguna, informing the jury that the County was not responsible for potential or probable dangers was not error.

The second sentence that Fuda contends used inapplicable law stated that the County has no duty to inspect its roadways. Fuda acknowledges that that sentence was grounded in The-Anh Nguyen v. City of Seattle, 179 Wn. App. 155, 171, 317 P.3d 518 (2014). But, like in Nguyen, Fuda "cites no common law, statutory, or regulatory authority requiring a municipality to inspect its street

infrastructure as a component of its duty to provide streets that are reasonable safe for ordinary travel." Id. The trial court acted within its discretion in determining that the jury should be instructed not to impose a duty to inspect.

D. Jury Instruction 17

Jury instruction 17 stated in relevant part that the jury may not use testimony regarding the presence or absence of guardrails. Fuda argues that this was error, because the trial court erred in holding that discretionary immunity applied to the decision not to install a guardrail, and because the trial court misinterpreted prior orders. These arguments fail for the same reasons that Fuda's discretionary immunity arguments fail.

IV. Sanctions

The trial court sanctioned Fuda for multiple actions. Those actions primarily related to (1) violation of orders in limine and (2) late disclosure of expert witness testimony. This court reviews a trial court's imposition of sanctions for abuse of discretion. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds. Id. at 339.

A. Sanctions for violation of orders in limine

Order in limine 4g excluded any references to how the deaths have affected family or friends. Fuda's attorney Ann Deutscher was sanctioned for repeatedly violating this order. The trial court's order imposing sanctions listed roughly eight instances where witnesses discussed personal grief, often elicited by counsel's

questioning. After the court had already "addressed at length the multiple violations of 'these simple orders,' " the court found that counsel continued to invite violation of order in limine 4g. The court therefore imposed sanctions of $1000 against Fuda's attorney Deutscher.

Fuda asks this court to reverse the imposition of these sanctions, because inexperienced witnesses "often give unanticipated answers." But, the trial court's findings suggest that the trial court had a sufficient factual basis to conclude that this went beyond mere witness inexperience. Fuda violated order 4g multiple times. Then, the court cautioned the parties. Then 4g was again violated. After the trial court's warning, Deutscher even stated to witness Colette Peterson, Hunter Beaupre's stepmother, in front of the jury, "You have been through a lot." The trial court's lengthy and detailed explanation for its ruling, with multiple references to portions of the record, satisfy us that the decision was not manifestly unreasonable, or based on untenable grounds.

The trial court also sanctioned Fuda's attorney James Dore, Jr., for violation of the order in limine that excluded the guardrails issue. Before Dore examined witness Marlene Ford, the court and the parties discussed at length the extent to which the orders in limine limited Ford's ability to discuss the condition of the road. But, a short time later, while questioning Ford, Dore read verbatim from a deposition transcript that explicitly mentioned guardrails. The County immediately objected and asked for "a very steep monetary sanction." The court imposed $2000 in sanctions against Dore. Its findings stated that Dore "extensively argued

18

with the Court about its clear ruling" before Dore mentioned guardrails, and that mentioning guardrails after arguing with the court was an "intentional violation" of the court's orders. .

Fuda argues that the transcript shows that Dore's uttering of the word guardrail was inadvertent. The trial court's order noted counsel's prior argumentative tone about its "clear ruling," yet counsel nevertheless violated those rulings. There was a lengthy exchange between the court and counsel prior to the violation about the permissible scope of testimony as it related to guardrails. The abuse of discretion standard recognizes that deference is owed to the judicial actor who is better positioned than another to decide the issue in question. Fisons, 122 Wn.2d at 339. In the context of this lengthy trial, the trial court was best positioned to evaluate whether the sanctions were warranted. It did not abuse its discretion in sanctioning Dore.

Fuda also contends that the amount of the monetary sanctions of $2000 against Dore, and $1000 against Deutscher, were excessive. RCW 7.21.050(2) gives statutory authority to courts to impose sanctions up to $500 for each separate instance of contempt. A court may impose sanctions beyond statutory authority, and instead under its inherent contempt power, only if it finds that the statutory basis would be inadequate. State v. Boatman, 104 Wn.2d 44, 48, 700 P.2d 1152 (1985). Fuda contends that the trial court erred in concluding that the statutory authority was insufficient. He contends that the trial court's explanation was merely conclusory.

But, the trial court's 19 page order imposing sanctions of over $500 referenced four separate categories of sanctionable conduct, by multiple attorneys. The trial court warned counsel before subsequent violations of orders in limine. Counsel disclosed experts late, violated multiple motions in limine, and, with references to the transcript, the trial court even observed that counsel "extensively argued with the Court" about clear rulings. The trial court viewed these violations as intentional. The finding that statutory contempt authority would be insufficient was not merely conclusory. The trial court did not err in assessing sanctions beyond statutory limits.[10]

B. Sanctions for late disclosure of experts

The trial court also imposed sanctions on Fuda for late disclosure of experts. Two days before trial, Fuda disclosed that his experts would be expressing opinions on "barriers," rather than "guardrails." According to the trial court, "In all material respects the disclosures were identical to the reports previously prepared by the experts regarding the need for and effect of guardrails." And, the trial court concluded that "[o]ffering new opinions that simply substitute the word 'barrier' for the word 'guardrail' just days before trial was a blatant effort to circumvent the Court's July 26, 2014 Order granting summary judgment and its order granting King County's Motions in Limine Nos. 6 and 7." The trial court therefore excluded these new expert opinions.

---

[10] To exercise its inherent contempt authority beyond statutory authority, the court must also comply with due process. See Boatman, 104 Wn.2d at 48. But, Fuda does not argue that the trial court's actions violated due process.

Fuda argues that the trial court erred, because at other points pretrial he and his experts gave notice that barriers other than guardrails might be referenced. He notes that his complaint referenced "barriers," not just guardrails. And, his experts referenced other barriers in their depositions. But, given the centrality of the barrier/guardrail argument to his case, it is implausible to believe the ruling on discretionary immunity would not encompass the duty of the County as to any and all barriers. And, the disclosure occurred after the discovery cutoff. Even, if there was a meaningful distinction between guardrails and barriers, the County did not have the benefit of deposing Fuda's experts on that distinction. And, the County would be disadvantaged in preparing its own experts on barriers. The trial court did not err in sanctioning Fuda for late disclosure of experts.

Fuda also argues that the trial court's decision on the level of sanction—excluding the expert opinions—was excessive. He argues that continuing trial, for example, would have been a more appropriate lesser sanction than exclusion of the expert opinions.

A trial court may exclude expert testimony as a sanction upon a showing that (1) the discovery violation was willful or deliberate, (2) the violation substantially prejudiced the opponent's ability to prepare for trial, and (3) the court explicitly considered less severe sanctions. Teter v. Deck, 174 Wn.2d 207, 216-17, 274 P.3d 336 (2012). The record supports the trial court's conclusion that the late disclosure was willful, because the plaintiffs violated the trial court's guardrail orders in other instances, as well. The County was prejudiced, because the

disclosure was made two days prior to trial, but the case had been in litigation for over four years leading up to trial. And, the court explicitly identified that less severe sanctions, such as monetary sanctions, would not be sufficient, because the County would be forced to respond to brand new expert testimony a mere two days before trial. Even if monetary sanctions were imposed, the County would still suffer a heavy burden of preparing to address these new opinions. The trial court did not abuse its discretion in excluding the expert opinions regarding barriers.[11]

We affirm.

WE CONCUR:

---

[11] Fuda also argues cumulative error warrants reversal. But, because we find no error, we find no cumulative error.