IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, its successors in interest and/or assigns,<br><br>Respondent,<br><br>v.<br><br>LAURA COZZA,<br><br>Appellant,<br><br>MATTHEW COZZA; CITIFINANCIAL, INC.; OCCUPANTS OF THE PREMISES,<br><br>Defendants. | No. 80966-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Laura Cozza defaulted on her mortgage. PNC Bank, the holder of the promissory note, brought this action seeking judicial foreclosure. Cozza answered PNC's complaint and asserted counterclaims broadly alleging fraud. PNC moved for summary judgment for decree of foreclosure and to dismiss Cozza's counterclaims. Cozza cross-moved for summary judgment on judicial foreclosure. The trial court granted PNC's motion for summary judgment and denied Cozza's cross-motion. We affirm.

I. BACKGROUND

In 2007, Laura Cozza and her then-husband Matthew Cozza agreed to a construction loan from National City Bank—PNC's predecessor by merger. They

Citations and pin cites are based on the Westlaw online version of the cited material.

used the loan to construct a home in Washington.

In February 2008, the Cozzas signed a promissory note (Note) to refinance the construction loan into a permanent mortgage loan (Loan) payable to National City Mortgage, a division of National City Bank. They also executed a Deed of Trust to secure the Note. National City Mortgage, a division of National City Bank, endorsed the Note to National City Mortgage Co., a subsidiary of National City Bank, which endorsed the note in blank.[1]

National City Corporation—National City Bank's parent company—merged with PNC in December 2008 and, as a result, National City Bank became a subsidiary of PNC. Before April 2013, PNC sold the Loan to Freddie Mac. In April 2013, Freddie Mac informed PNC that because PNC overstated Laura Cozza's income in violation of Freddie Mac's requirements, PNC needed to repurchase the Loan.

The Cozzas separated in 2010 and in 2011, during their divorce proceeding, Matthew Cozza transferred all his interest in the property to Laura Cozza.[2] After the separation, Laura Cozza stopped making mortgage payments. While the parties dispute when Laura Cozza ceased payments, they agree she has not made payments since 2012. In 2014, Laura Cozza moved to Pennsylvania and has since rented out the property at issue.

---

[1] When endorsed in blank, a note is "payable to bearer and may be negotiated by transfer of possession alone." Brown v. Dep't of Commerce, 184 Wn.2d 509, 523, 359 P.3d 771 (2015) (quoting RCW 62A.3-205(b)).

[2] The record does not show this transfer, but the parties agree it occurred.

2

In 2016, PNC sued the Cozzas, seeking judicial foreclosure. The Cozzas answered, asserting counterclaims. In 2019, PNC moved for summary judgment for judicial foreclosure and dismissal of the Cozzas' counterclaims. The Cozzas cross-moved for summary judgment, seeking dismissal of the foreclosure claim.

At a hearing on the motions, PNC produced the original Note signed by the Cozzas and endorsed in blank. At a second hearing, the trial court granted PNC's motion and denied the Cozzas' cross-motion. Neither the oral ruling nor the written order on the motions includes findings of fact or conclusions of law. The trial court then entered a Judgment and Decree of Foreclosure, which dismisses the Cozzas' counterclaims with prejudice.

Laura Cozza[3] appeals.

## II. ANALYSIS

### A. PNC's Motion for Summary Judgment

Cozza says that the trial court erred in granting PNC's motion for summary judgment for judicial foreclosure and dismissal of counterclaims because genuine issues of material fact exist as to multiple issues. We disagree.

We review de novo summary judgment rulings. Matter of Estate of Ray, 15 Wn. App. 2d 353, 356, 478 P.3d 1126 (2020). "Summary judgment is appropriate if the record shows there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Id. A fact is material if the outcome of the litigation depends on it. Id. Courts "consider the

---

[3] Below, this opinion refers to Laura Cozza as "Cozza" as Matthew Cozza is not a party to the appeal.

facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party." Id. at 357. "The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits accepted at face value." Heath v. Uraga, 106 Wn. App. 506, 513, 24 P.3d 413 (2001). If the nonmoving party fails to show a genuine issue of material fact, then summary judgment is proper. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

1. Judicial foreclosure

a. Standing

Cozza says that a genuine issue of material fact exists as to whether PNC had standing to sue. She contends the record shows that Freddie Mac, and not PNC, is the owner of the Note and Deed of Trust, so PNC cannot seek foreclosure. PNC responds that it has such standing, given that it is the holder of the Note. We agree with PNC.

"[I]t is the holder of a note who is entitled to enforce it."[4] Deutsche Bank Nat'l Tr. Co. v. Slotke, 192 Wn. App. 166, 173, 367 P.3d 600 (2016). And one who possesses a note holds it. Id. "A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof [of the status to enforce the note]." Bavand v. OneWest Bank,

---

[4] Cozza says that a related issue is "whether PNC's fraud requires" the application of prior law. Citing Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 285 P.3d 34 (2012), she notes that prior law required that a creditor must own and hold the note to foreclose on a deed of trust. As discussed below, Cozza does not establish any issue of fact as to fraud, and thus we do not address this argument.

196 Wn. App. 813, 824, 385 P.3d 233 (2016), as modified (Dec. 15, 2016) (emphasis omitted) (quoting RCW 61.24.030(7)(a)).

PNC submitted evidence that it holds and owns the Note. The declaration of PNC employee Sarah Greggerson says that PNC possessed the Note when it initiated the complaint. During her deposition, Cozza stated that she recognized her signature on the Note. And at the first summary judgment hearing, PNC produced what it claimed was the original Note in its possession.[5] National City Mortgage Co., a subsidiary of National City Bank, endorsed the note in blank and then National City Bank merged with PNC.[6]

Cozza submitted correspondence between Freddie Mac and PNC from 2013 in which Freddie Mac informed PNC that PNC must repurchase the Subject Loan because PNC inflated Cozza's income, which violated the sale guidelines. But this merely indicates that Freddie Mac owned the Note at some point. Nothing in this correspondence indicates that PNC did not buy back the loan.

Cozza contends that PNC should have produced evidence that it bought back the Loan. But possession of the Note suffices for PNC to have standing. See Deutsche Bank, 192 Wn. App. at 173.

Cozza also says that PNC cannot sue because it committed fraud by overstating Cozza's income and claiming ownership of the Loan when it was not

---

[5] While Cozza disputed at the hearing that the Note was in fact the original Note, she does not make a similar argument on appeal.

Cozza suggests that Tara Ingram, the document custodian who endorsed the Note in blank, lacked the authority to do so, but points to no evidence to support this suggestion.

[6] When endorsed in blank, a note is "payable to bearer and may be negotiated by transfer of possession alone." Brown, 184 at 523 (quoting RCW 62A.3-205(b)).

the owner.  We conclude that Cozza has not established a genuine issue of material fact about fraud, and thus fraud cannot constitute the basis for an argument that PNC lacks the authority to sue.[7]

Cozza relies only on the correspondence between Freddie Mac and PNC in her attempt to establish a genuine issue of material fact as to the existence of fraud.  In these documents, Freddie Mac required PNC to repurchase the Loan because PNC overstated Cozza's income.  PNC responded that it did not overstate Cozza's income and that Freddie Mac failed to establish that PNC must repurchase the Loan.  Freddie Mac responded by reiterating its previous position.  This exchange hardly suffices to raise a genuine issue of material fact about fraud.  Freddie Mac does not accuse PNC of fraud, and overstated income alone is not evidence of fraud.  Thus, the trial court did not err.

b.  Default

Cozza says that a genuine issue of material fact exists as to whether PNC "manufactured" her default.  Cozza says that she made her mortgage payments for January, February, and March 2011, and that this conflicts with PNC's contention that she made none of those payments.  PNC disagrees.  We

---

[7] The elements of fraud are:

(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

Frontier Bank v. Bingo Inv., LLC, 191 Wn. App. 43, 59, 361 P.3d 230 (2015) (quoting Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 166, 273 P.3d 965 (2012)).  They "must be established by clear, cogent, and convincing evidence."  Id.

conclude that, even assuming Cozza established an issue about when she stopped making payments, she has not established materiality.

Greggerson's declaration says that Cozza failed to make payments in January and February 2011. It says that Cozza made a payment in March 2011 but PNC returned the payment as insufficient to bring the account current. Greggerson noted that Cozza has not made a regular monthly payment under the Note since March 2011. Financial documents from 2011 corroborate this declaration. Greggerson stated that in 2012, Cozza made three payments under a trial payment plan for a potential loan modification, but afterward Cozza did not make any payments on the Loan. PNC submitted financial documents showing that the three payments Cozza made in 2012 were combined and used to pay off her balance from January and February 2011.

During her deposition, Cozza stated that she had made her January, February, and March 2011 payments as well as three payments in 2012. Her declaration makes similar statements and says that PNC returned her March 2011 payment with no explanation. Cozza submitted a series of documents PNC sent her that state that she was in default as of March 2011. One undated document titled "Current Loan Information," states that the "year to date" total payments equal $3,766.46 and that the next payment was due on March 1, 2011.

Cozza concedes that she has not made payments since 2012. But she says she has established a genuine issue of material fact as to whether PNC "manufactured" the default. Cozza says that PNC's calculations for the total amount owed "have to be off." Assuming she has shown an issue as to the

7

timing of the default, she has not pointed to evidence showing how that issue is material to the question of whether PNC "manufactured" the default.  See Ray, 15 Wn. App. at 356 (holding that an issue is material only if it affects the outcome of the litigation).

### c.  Case of equity

Cozza seemingly argues the following: this is a case of equity, the trial court seems to have agreed, summary judgment is often inappropriate in equity cases, thus the trial court should have "set forth" its decision to apply equity jurisdiction in its summary judgment ruling.  See Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 220–21, 242 P.3d 1 (2010) ("Due to the discretionary nature of decisions made in equity, granting equitable relief on summary judgment may be inappropriate in many cases.").  Cozza says, based on the trial court's ruling, one cannot tell whether the trial court considered her arguments that PNC lacked standing and that the trial court should exercise equity jurisdiction.

The parties agree that the case is equitable in nature.  But the trial court did not indicate whether it was treating the case as such.[8]  Cozza cites no legal authority requiring that if a court exercises equity jurisdiction, it say so in its summary judgment ruling.  We conclude that the trial court did not err.

---

[8] During a hearing, the trial court noted, "[T]he Defendants specifically requested that this court exercise its considerable powers in equity in their favor" and ruled that by doing so, Cozza waived any personal jurisdiction argument.  But this does not show whether the trial court agreed that it should exercise equitable jurisdiction.

2. Dismissal of counterclaim for trespass

As to her claim for trespass,[9] Cozza says that a genuine issue of material fact exists as to the reason she moved out of her Washington home to Pennsylvania. She contends that she was forced out by harassing trespassers sent by PNC. PNC responds that she left to rent out the property. It says that the trial court properly dismissed Cozza's claims because no trespass occurred. We conclude no genuine issue of material fact exists on this issue.

Cozza submitted a declaration stating that people came onto her property "every week," took photographs, and verbally abused her. Cozza submitted photographs that PNC's agents took of her house, a description of her home by an agent, and photographs of a car allegedly belonging to someone who came to empty the house. These establish only that PNC's agents have been to the property. And Section 7 of the Deed of Trust states, "Lender or its agent may make reasonable entries upon and inspections of the Property." Also, Section 9 states, "If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . the Lender may do and pay for whatever is reasonable, or appropriate to protect Lender's interest in the Property and rights under this Security Instrument." Cozza's evidence falls short of establishing a genuine issue of fact as to trespass, particularly since she must establish an issue of fact as to each of the elements of trespass.

---

[9] "To establish intentional trespass, a plaintiff must show (1) an invasion of property affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial damages." Wallace v. Lewis County, 134 Wn. App. 1, 15, 137 P.3d 101 (2006), as corrected (Aug. 15, 2006).

3. Credibility

Cozza says that because this case involved issues of credibility, granting summary judgment for PNC was error. PNC responds that Cozza introduced no evidence creating an issue as to credibility. We conclude that the trial court did not err in this regard.

Cozza relies on Balise v. Underwood, 62 Wn.2d 195, 381 P.2d 966 (1963), for the proposition that if a party provides impeaching or contradicting evidence, an issue of credibility arises and in such a case, a court should deny a motion for summary judgment. But later cases clarify that "while a court should not resolve a genuine issue of credibility at a summary judgment hearing, '[a]n issue of credibility is present only if the party opposing the summary judgment comes forward with evidence which contradicts or impeaches the movant's evidence on a material issue.'" Laguna v. Dep't of Transp., 146 Wn. App. 260, 266–67, 192 P.3d 374 (2008) (alteration in original) (quoting Howell v. Spokane & Inland Empire Blood Bank, 117 Wn.2d 619, 626–27, 818 P.2d 1056 (1991)). "Impeachment of a witness does not establish the opposite of [their] testimony as fact," thus impeachment does not necessarily establish a genuine issue of material fact. Laguna, 146 Wn. App. at 267.

Cozza purports to have impeached PNC's contention that it may foreclose, and that PNC has not denied multiple allegations, including that it acted in bad faith and engaged in trespass. Cozza says that because this case turns on whether Cozza and her business records are more credible than PNC and its records, summary judgment is inappropriate. Cozza has not provided

10

evidence impeaching PNC's assertion that it held the Note when it initiated the complaint or establishing that PNC acted in bad faith[10] or committed trespass. Nor has she provided any evidence to impeach any other material factual assertion by PNC. Cozza has not established a "genuine issue of credibility." See id. at 266.

4. PNC's failure to mediate in good faith

Cozza says that because a mediator found that PNC failed to mediate in good faith, Cozza is entitled to a defense under the Foreclosure Fairness Act. PNC responds that the applicable statutory provision precludes such a defense against judicial foreclosure. We agree with PNC.[11]

RCW 61.24.163(14)[12] provides:

(14)(a) The mediator's certification that the beneficiary failed to act in good faith in mediation constitutes a defense to the nonjudicial foreclosure action that was the basis for initiating the mediation. In any action to enjoin the foreclosure, the beneficiary is entitled to rebut the allegation that it failed to act in good faith.

(b) The mediator's certification that the beneficiary failed to act in good faith during mediation *does not constitute a defense to a judicial foreclosure or a future nonjudicial foreclosure action if a modification of the loan is agreed upon and the borrower subsequently defaults.*

(Emphasis added).

---

[10] Cozza offers no evidence arguing that PNC acted in bad faith as to the modifications. Cozza submitted a declaration alleging bad faith, but Cozza does not cite it on appeal, nor is the declaration enough to establish a genuine issue of material fact. See Heath, 106 Wn. App. at 513 (a party cannot reply on "having its affidavits accepted at face value").

[11] Because we conclude that PNC's failure to mediate in good faith is not a defense to judicial foreclosure, we do not address Cozza's contention that a genuine issue of material fact exists as to "bad faith modifications."

[12] In her opening brief, Cozza cites the 2011 version of the statute, but the current version is identical in pertinent part. Former RCW 61.24.163(11) (2011).

Division Two of this court held that this statute[13] precludes a defense against judicial foreclosure when a mediator decides a beneficiary failed to act in good faith.  Wells Fargo Bank, N.A. for Option One Mortg. Loan Tr. 2006-1, Asset-Backed Certificates, Series 2006-1 v. Gardner, noted at 5 Wn. App. 2d 1011, slip op. at 10 (2018); see GR 14.1 ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions").  The court set forth two reasons why the defense does not apply to judicial foreclosures:

> First, the absence of any reference to "judicial foreclosure" in subsection (a) suggests that the legislature did not intend to provide an affirmative defense to judicial foreclosure.  If the legislature had intended to extend the affirmative defense to both judicial and nonjudicial foreclosures, it could have clearly expressed that intent by including both terms in subsection (a).  Second, the last antecedent rule is not merely a formalistic maxim based on punctuation, but is a sign of legislative intent.  Under that rule, the qualifying phrase "if a modification of the loan is agreed upon and the borrower subsequently defaults," applies only to "a future nonjudicial foreclosure action," because that is the immediately preceding antecedent and there is no comma before the qualifying phrase.

Id. at 9 (quoting former RCW 61.24.163(14)(b)).[14]  We agree with this reasoning and conclude that Cozza was not entitled to a defense under RCW 61.24.163.

B.  Cozza's Cross-Motion for Summary Judgment

We review de novo summary judgment rulings.  Ray, 15 Wn. App. at 356.

---

[13] The court in this case interpreted the 2014 version of the statute.  The language in the pertinent part of the 2014 version is identical to the current version.

[14] Gardner, slip op. at 8 ("one rule of grammar applied to statutory interpretation is 'the last antecedent rule, which states that qualifying or modifying words and phrases refer to the last antecedent.'" (quoting State v. Bunker, 169 Wn.2d 571, 578, 238 P.3d 487 (2010))).

1. PNC's name in the case caption

Cozza says that PNC failed to name the proper party in the complaint's caption by including "successors and assigns" after its name. PNC says Cozza waived this argument and, in any event, no law prevents PNC from including such boilerplate language in their name. We agree with PNC that Cozza waived this argument.

"Generally, any objection to the capacity of a business to bring suit based solely on the identity of the named plaintiff must be raised in a preliminary pleading or by answer or the objection is deemed waived." Bus. Serv. of Am. II, Inc. v. WaferTech, LLC, 188 Wn.2d 846, 851, 403 P.3d 836 (2017). Cozza did not make any such objection. Thus, she waived her argument on this issue.

2. Issues of equity

Cozza says that the trial court erred in how it resolved issues of equity. She contends that the trial court failed to apply principles of equity by declining to provide its reasoning for its rulings. As discussed below, the trial court did not err in declining to enter findings of fact and conclusions of law. And Cozza cites no law requiring any other type of reasoning in cases of equity. Aside from this contention, Cozza does not explain how the trial court erred in resolving issues of equity.

C. Findings of Fact and Conclusions of Law

Relying on the party presentation principle[15] and the separation of powers

_____

[15] According to the party presentation principle, "courts are essentially passive instruments of government" and should not be too involved in the adversarial process. See United States v. Sineneng-Smith, __ U.S. __, __, 140 S. Ct. 1575, 1579, 206 L. Ed.

doctrine, Cozza says that the trial court erred by not issuing findings of fact and conclusions of law. Cozza asks this court to remand the case for findings and conclusions related to whether recusal was required and whether a violation of the separation of powers doctrine occurred. PNC responds that Cozza waived this argument. PNC also says Washington law establishes a trial court need not enter findings of fact and conclusions of law when granting summary judgment. We conclude that even if Cozza did not waive this argument,[16] the trial court did not err.

The trial court relied on Sinclair v. Betlach, 1 Wn. App. 1033, 1034, 467 P.2d 344 (1970), in determining that entering findings of fact in a motion for summary judgment would be superfluous. Cozza contends that Sinclair is distinguishable on the facts, but other cases similarly hold. See, e.g., Davenport v. Washington Educ. Ass'n, 147 Wn. App. 704, 716 n.23, 197 P.3d 686 (2008) ("the Washington Supreme Court has 'held on numerous occasions that findings of fact and conclusions of law are superfluous in both summary judgment and judgment on the pleadings proceedings.'" (quoting Washington Optometric Ass'n v. Pierce County, 73 Wn.2d 445, 448, 438 P.2d 861 (1968))). Cozza relies on State v. Agee, 89 Wn.2d 416, 419, 573 P.2d 355 (1977), but that criminal case

---

2d 866 (2020) (quoting United States v. Samuels, 808 F.2d 1298, 1301 (8th Cir. 1987)). Cozza says the trial court violated this principle. But the record does not show that the trial judge was too involved in the adversarial process or otherwise failed to act as a neutral arbiter. And Cozza does not convincingly explain how this principle or the separation of powers doctrine required the trial court, contrary to other law, to enter findings and conclusions.

[16] Cozza did not object below when the court declined to issue findings and conclusions. Under RAP 2.5(a) we may decline to address issues raised for the first time on appeal. And Cozza does not respond to this waiver contention in her reply brief. But we address it because some of Cozza's other arguments relate to it.

addresses a CrR 4.5 motion to suppress and not summary judgment. The trial court did not err in declining to enter findings of fact and conclusions of law on its summary judgment rulings.

D. Recusal

Cozza says the trial judge erred by failing to address a potential conflict of interest. PNC says that the trial judge did not have an interest requiring recusal. We conclude that the trial court acted within its discretion.

"We review a trial court's recusal decision for an abuse of discretion." Tatham v. Rogers, 170 Wn. App. 76, 87, 283 P.3d 583 (2012). "The court abuses its discretion when its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons." Id.

"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." Id. at 90 (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980)). But because "the common law and state codes of judicial conduct generally provide more protection than due process requires" courts typically "resolve questions about judicial impartially [sic] without using the constitution." JPMorgan Chase Bank, N.A. v. Stehrenberger, noted at 193 Wn. App. 1035, slip op. at 3–4 (2016); see GR 14.1. Under the Code of Judicial Conduct, a judge must recuse if their impartiality may reasonably be questioned. West v. Washington Ass'n of County Officials, 162 Wn. App. 120, 136–37, 252 P.3d 406 (2011). But recusal is unnecessary if a judge's interest is de minimis. Kok v. Tacoma Sch. Dist. No. 10, 179 Wn. App. 10, 26, 317 P.3d 481 (2013). De

minimis interests are insignificant and include "an interest in the individual holdings within a mutual or common investment fund." Stehrenberger, slip op. at 5 (quoting Comment 6 to the CJC 2.11).

Cozza says that the trial court judge, and likely all Washington state judges, have a conflict of interest in this case. She says that a "substantial amount" of judges' retirement funds are invested in mortgage-backed securities comprised of loans such as the one at issue here. She contends that judges are disinclined to rule against foreclosures in cases involving fraud because doing so will impact the stability of mortgage backed securities. She says this is so given the "rampant" fraud relating to these types of investments. She says that the Due Process Clause of the United States Constitution prevents a judge from hearing a case in which the judge has an interest.

Cozza raised this argument before the trial court. She did not move to disqualify the judge—her attorney raised the issue in his declaration in support of her cross-motion for summary judgment. She requested that if the trial court believed a potential conflict existed, it should appoint a non-sitting Judge Pro Tempore. And she requested that if the trial judge declined to recuse himself, the court include reasoning for that decision in its summary judgment ruling. The trial judge did not address this issue at the hearings or in his order and did not recuse himself.

"[A]n interest in the individual holdings within a mutual or common investment fund"—such as the interest at issue—is de minimis. See Stehrenberger, slip op. at 5 (quoting Comment 6 to the CJC 2.11). This case is

16

like <u>Stehrenberger</u> in which the court held that the judge's retirement fund being invested by the state in diversified investments—including holdings in JPMorgan, the plaintiff there—was a de minimis interest not requiring recusal. <u>Id.</u> at 4–5; <u>see</u> GR 14.1. And while Cozza states that a failure to address a request to recuse borders on "judicial tyranny," she does not cite law requiring that a trial court explicitly address such a request, which she did not make in a separate motion. The trial court did not err by declining to address the conflicts issue or recuse himself.

We affirm.

_____
Chun, J.

WE CONCUR:

_____       _____
Coburn, J.                              Brennan, J.

17