IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CARLTON EVANS and MARGARET EVANS, husband and wife, | ) ) ) | No. 36495-0-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SPOKANE COUNTY, a local governmental entity doing business in Spokane County, Washington, | ) ) ) ) | |
| Respondent. | ) ) | |

SIDDOWAY, J. — Carlton and Margaret Evans sued Spokane County for damages for severe injuries suffered by Mr. Evans when a tall ponderosa pine in the county right-of-way snapped and crashed through his car's windshield. The trial court dismissed one of the Evanses' theories of liability on summary judgment and a jury trial of their remaining claim resulted in a defense verdict. The Evanses challenge the order granting partial summary judgment, three jury instructions, and rulings excluding or limiting the testimony of three of their experts. The County responds with four of its own challenges to instructional decisions made by the trial court, should we reverse and remand for a new trial.

We affirm the partial summary judgment, but a nonpattern jury instruction proposed by the County based on language from *Laguna v. State*, 146 Wn. App. 260, 265, 192 P.3d 374 (2008), misstated the law, was not harmless, and requires us to reverse and remand for a new trial. We address several harmless errors so they can be avoided in a retrial.

FACTS AND PROCEDURAL BACKGROUND

On July 23, 2014, the Spokane area experienced a heavy windstorm. As Carlton Evans drove home that afternoon to Chattaroy, traveling on East Big Meadows Road, an 80- to 90-foot-tall ponderosa pine tree snapped 11 feet above the ground and crashed through the windshield of his car. The tree impaled Mr. Evans through his pelvis and severed his left hand, which eventually required amputation of his arm. The tree was located 11 or 12 feet off the side of the road, within Spokane County's 30-foot right-of-way.

After the County denied notices of claim filed by Mr. Evans and his wife, they filed suit in February 2017. Among the Evanses' theories of liability were that the County breached duties it owed as a municipality, as owner of the land on which the tree was located, and as possessor of the right-of-way, by negligently failing to maintain a "clear zone" free of trees and other natural and artificial obstacles along the right-of-way,

by negligently failing to mitigate dangerous conditions along the right-of-way, and by negligently failing to adopt inspection and mitigation policies.[1] The Evanses contended that the County knew or should have known that the pine tree was dangerous either because the County created the danger or the danger was apparent.

The County admitted that Mr. Evans suffered catastrophic injuries from the tree's fall, that it owned the road, that the tree was within the right-of-way, and that it owed a common law duty to maintain its roadways in a condition reasonably safe for travel. It denied breaching those duties and denied the existence of some of the specific duties relied on by the Evanses. It also raised affirmative defenses of legislative and discretionary immunity and that the wind was a supervening cause of the tree breaking and falling on Mr. Evans's car.

The conduct of discovery was contentious and resulted in two trial continuances. A late disclosure by the Evanses resulted in the trial court's exclusion of their weather expert, Tim Wright.

---

[1] Although the County's discovery responses admitted to owning the land on which the tree was located, the only evidence admitted at trial was that the County possessed the land by virtue of the right-of-way. For purposes of the duties addressed in our analysis, whether the County owned or possessed the land by virtue of its right-of-way makes no difference.

SUMMARY JUDGMENT

Following the completion of discovery the County moved for summary judgment, asking the trial court to dismiss all of the Evanses' claims on multiple grounds. The trial court granted summary judgment only in part. It ruled that the County's road standards, which imposed a qualified duty to create a clear zone in certain circumstances, did not apply to Big Meadows Road. Alternatively, it ruled that the qualified nature of the duty—that a clear zone be created where its creation is practical and feasible—meant that legislative and discretionary immunity would apply.

THE EVANSES' EXPERT WITNESSES AND EXCLUSION RULINGS

In pretrial motions in limine, the County asked the trial court to exclude evidence from three of the Evanses' experts: Mark Webber, an arborist; Joellen Gill, a risk management expert; and James Valenta, a civil engineer who specializes in transportation safety and the maintenance of roadways and other transportation facilities. The trial court denied the motion as to Mr. Webber, and he later testified that the pine tree whose fall injured Mr. Evans was structurally deficient due to disease; that the County caused the disease by misapplying herbicides; that the County should have seen that the tree was diseased; and that had the tree been healthy it would not have fallen from the wind speeds experienced on the day of the accident.

Mr. Valenta, the civil engineer with a working background in highway safety and as upper-level management for two municipal transportation departments in the Midwest,

4

was expected by the Evanses to testify to best practices and standards of care for municipal transportation departments. The County argued that he should be excluded because all of his testimony went to the clear zone theory, which was out of the case by virtue of the summary judgment ruling. The Evanses argued that Mr. Valenta would offer testimony on issues that remained: that the County's budget was sufficient to fund inspection and mitigation that would have resulted in removal of the subject hazardous tree. The trial court ruled that Mr. Valenta could offer only opinions unrelated to the clear zone and the Evanses would have to establish a foundation for that unrelated testimony at trial.

Mr. Valenta eventually testified as a rebuttal witness. The Evanses were unsuccessful in efforts to elicit his testimony that the County had a budget surplus that could have been spent on training, roadway inspection and danger mitigation, and that several other Washington counties had vegetation management plans for road maintenance that included provisions for inspecting for dangerous trees. This was due largely to the trial court's rulings on objections to a lack of foundation and to subject matter areas being foreclosed by legislative or discretionary immunity.

Ms. Gill was the Evanses' expert on risk management. In voir dire conducted after the County challenged the relevance and helpfulness of her opinion, she testified that she intended to testify generally that the County's lack of a tree risk management

program was neither reasonable nor safe. At the same time, however, she admitted that she had no knowledge or training about hazardous trees.

In ruling on the admissibility of Ms. Gill's testimony, the court accepted her as an expert on risk management, noting she had previously been admitted as an expert in the court on other matters. The trial court found that Ms. Gill had no foundational knowledge from which to express an opinion that tree risk management plans were a best practice or that having such a plan was required by ordinary care, however. At most, if presented with a safety plan, she could bring her knowledge and experience to bear in identifying its weaknesses and strengths. But the County had no tree risk management plan, a fact testified to by several County witnesses. The trial court excluded Ms. Gill as a witness, finding her proposed testimony unhelpful to the jury.

JURY INSTRUCTIONS

The parties offered a number of modified versions of pattern instructions from former *Washington Practice: Washington Pattern Jury Instructions: Civil* (6th ed. 2012) (WPI). Both parties also offered nonpattern instructions. When given the opportunity to voice objections and exceptions at an instruction conference taking place on the last day of trial, both parties raised a number of objections and exceptions to the trial court's final proposed instructions. The trial court ultimately gave 26 instructions, one of which, instruction 18, was inserted following the conference (although with a forewarning that an instruction described, but not provided, would be inserted).

VERDICT

The special verdict form provided to jurors asked separately whether the County was negligent, whether its negligence was a proximate cause of injury to the Evanses, and what the jury found to be the amount of the Evanses' damages. By a vote of 10 to 2, the jury found the County was not negligent. It therefore never reached the question about proximate cause.

The Evanses appeal. In responding, the County raises challenges to some of the trial court's instructional rulings that it asks us to address in the event of a reversal.

ANALYSIS

I.   THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT DISMISSAL OF THE THEORY THAT THE COUNTY COMMITTED NEGLIGENCE BY VIOLATING A ROAD STANDARD REQUIRING "CLEAR ZONES"

RCW 36.75.020 requires counties to build and maintain their roads according to standards adopted by the county's legislative authority. Spokane County adopted its most recent roads standards by ordinance in 2010.

Among the standards adopted in 2010 are standards for clear zones. "Clear zone" is defined to mean "the unobstructed area provided beyond the edge of the traveled way for the recovery of errant vehicles." Clerk's Papers (CP) at 1045 (capitalization omitted). In other words, a clear zone is that portion of the right-of-way intentionally cleared of all obstructions (manmade and natural) to permit a vehicle to safely recover steering and control and not crash into such objects if the vehicle leaves the roadway.

7

One of the Evanses' theories of liability was that County standards required a clear zone on Big Meadows Road, and the allegedly defective pine tree was located within the area of the required clear zone. They contended that if the County had created the required clear zone the tree would have been removed before the windstorm that caused it to break and fall. A breach by the County of a duty created by its road standards would be admissible evidence of negligence. *See* RCW 5.40.040.

In moving for summary judgment dismissal of the claim, the County argued that (1) there was no duty to update Big Meadows Road, an old roadway, to conform to present-day design standards, (2) an injury resulting from a falling tree did not fall within the scope of any duty to create a clear zone, (3) the clear zone theory was barred by legislative and/or discretionary immunity, and (4) no genuine issue of proximate cause was presented by the Evanses.

The trial court granted summary judgment in part. It ruled that the County's road standards did not apply to Big Meadows Road and even if they did, the qualified nature of the duty (that a clear zone be created when practical and feasible) meant that legislative and discretionary immunity would apply.

"When reviewing an order for summary judgment, [we] engage[ ] in the same inquiry as the trial court." *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). We will affirm summary judgment if no genuine issue

8

of any material fact exists and the moving party is entitled to judgment as a matter of law.

*Id*. "All facts and reasonable inferences are considered in the light most favorable to the

non-moving party, and all questions of law are reviewed *de novo*." *Id*. (emphasis added)

(citations omitted).

For old roads that are part of the County's road system, the 2010 road standards

require that they be brought up to current design standards only when they are

reconstructed, resurfaced, restored, or rehabilitated, and then only to the extent practical

and feasible.[2] "Reconstruction" involves "major construction" and "significant changes,"

---

[2] The road standards define "[r]esurfacing" as meaning "the addition of a layer or layers of paving material to provide additional structural integrity or improved profile and serviceability." CP at 1047. "Restoration" means "work done on pavement . . . to prepare them for an additional stage of construction." *Id.* "Rehabilitation" means "work similar to restoration except the work may include but is not limited to the following:

[1] Reworking or strengthening the base or subbase
[2] Recycling or reworking existing materials to improve their structural
    integrity
[3] Adding underdrains
[4] Replacing or restoring malfunctioning joints
[5] Substantial pavement undersealing when essential for stabilization
[6] Grinding of pavements to restore smoothness, providing adequate
    structural thickness remains
[7] Removing and replacing deteriorated materials
[8] Crack and joint sealing but only when required shape factor is
    established by routing or sawing
[9] Improving or widening shoulders."

*Id.*

and the Evanses do not contend that the County engaged in reconstruction of Big

Meadows Road following adoption of the 2010 standards. CP at 1047. They do contend

that the County engaged in resurfacing, restoration, or rehabilitation—what the standards

refer to, in shorthand, as a "3-R project"—following adoption of the 2010 standards and

before the windstorm that caused the allegedly defective pine tree to break.[3]

We agree with the trial court that the Evanses presented no evidence supporting

their contention that 3-R work was performed during the relevant time frame, thereby

triggering application of the 2010 road standards. In their reply brief and at oral

argument of the appeal, the Evanses' argued that such evidence was presented through a

County response to an interrogatory and the deposition testimony of Mr. Valenta.

In the interrogatory, interrogatory 34, the Evanses inquired about improvements or

modifications "at and within ten miles" of Big Meadows Road, "from 1987 to present."

CP at 1322. A supplemental County response states, without reference to any time

frame, that it has "paved and resurfaced the road surface of Big Meadows Road." *Id.* A

related request for production asked for documents regarding the improvements and

modifications identified, and the County produced documentation of two road projects

---

[3] "3-R" is a defined term under the standards, meaning "activity that involves the resurfacing, restoration, or rehabilitation of an existing road." CP at 1045.

10

that occurred in 1965 and some "Mobility Database screenshots ([B]ates no. 01540001-52) regarding paving and resurfacing projects on Big Meadows Road." CP at 1323.

The Mobility Database screenshots are road logs for Big Meadows Road that are largely illegible and indecipherable. They can be dismissed as evidence sufficient to create a genuine issue of fact because in a third motion to compel discovery (to which these screenshots were attached as exhibit 14), the Evanses complained that the screenshots do not contain dates of paving and resurfacing work.

In the deposition of Mr. Valenta that the Evanses cite in support of this issue on appeal, he testified that he reviewed County budgetary records and identified five pages that reflected County expenditures in 2013 and 2014 "to do something along that roadway" that he believed might be 3-R projects. CP at 1404. After providing the Bates numbers for the five pages, Mr. Valenta stated, with respect to these recorded expenditures,

> Those are the projects that I had previously said I would like to see the specifications or the plans for what those projects entail. They appear to be chip seals, but I'd like to see some documentation of the actual work.

*Id.* The Bates-numbered documents cited by Mr. Valenta are not in the record on appeal.

The discovery response and Valenta deposition testimony on which the Evanses rely are evidence that the County *might* have undertaken a 3-R project during the relevant time frame, not that it *did* undertake such a project during that time frame. A nonmoving party must demonstrate that a genuine issue of material fact exists, not that it might exist.

11

*Tiger Oil Corp. v. Yakima County*, 158 Wn. App. 553, 562, 242 P.3d 936 (2010). It

"'may not rely on . . . argumentative assertions that unresolved factual issues remain.'"

*Id.* (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1

(1986)). We note that in response to the County's motion for summary judgment, the

Evanses made a CR 56(f) motion that was granted, with the result that the County's

motion, originally set for hearing on July 20, 2018, was not heard until August 24, 2018.

In oral argument on appeal, the Evanses returned to an argument made in the trial

court: that worker timecards reflecting brushing and related work done in May and July

2014 were evidence of a 3-R project. In the trial court, the Evanses pointed to time

records (Time Report Entry for Crew) that reflected the following activity on Big

Meadows Road in 2014:

- On May 13, 2014, Brush Clearing/Tree Trimming,
- On May 21, 2014, Brush Clearing/Tree Trimming,
- On May 22, 2014, Brush Clearing/Tree Trimming, and
- On May 28, 2014, Brush Clearing/Tree Trimming.

CP at 1982-85. One of the time reports included a comment, "cleaning for chip seal."

CP at 1984 (capitalization omitted).

The definition of "[r]esurfacing" adopted by the County—"the addition of a layer

or layers of paving material to provide additional structural integrity or improved profile

and serviceability"—would encompass chip sealing. CP at 1047. Chip sealing

12

(bituminous surface treatment) is a form of resurfacing short of full repaving.[4]  But the

Evanses' evidence in opposition to summary judgment did not establish that chip sealing

itself took place before the windstorm that caused the pine tree to break.  In fact, in

connection with a motion to compel discovery filed after the trial court dismissed their

clear zone theory, the Evanses submitted additional time records, whose earliest report of

crack or chip sealing work is not until after the accident: July 28, 2014, continuing into

August 2014.

The Evanses argue from time reports showing the preparatory brush clearing work

that had the County required a clear zone for this 3-R project, it would have been before

the windstorm.  This is pure speculation.  Creating a clear zone right after or at the same

time as the chip sealing itself could have complied with the road standards.

In connection with this issue, the Evanses make passing reference to other

documents in the record that are equally unavailing.  They cite to CP 916, a County

admission that it "had the means and funding to remove the subject tree prior to the

---

[4] Chip sealing involves adding a layer of asphalt mixed with crushed gravel (the chips) on top of existing pavement.  The gravel is then compacted and embedded into the asphalt by rollers and left to cure for a couple of days.  Chip sealing is substantially cheaper than repaving and extends the useful life of an existing road by approximately seven years. *Chip Seal*, WASH. ST. DEP'T OF TRANSP., https://www.wsdot.wa.gov /construction-planning/preservation/chip-seal [https://perma.cc/8K45-Y57M].

incident on July 23, 2014." They cite to CP 1069, the portion of the Road Standards incorporating AASHTO[5] standards for clear zones. They cite to CP 1357, a page of the deposition transcript of the county engineer, discussing his interpretation of the 3-R definitions. They cite to CP 1399, a page of the deposition transcript of Mr. Valenta, in which he answers questions about prior accidents on Big Meadows Road. None of these records are relevant to whether the County engaged in a 3-R project triggering a requirement that it create a clear zone prior to the July 23, 2014 windstorm.

Summary judgment dismissing the clear zone theory was properly granted.

II.     ALLEGED INSTRUCTIONAL ERROR: APPEAL AND CROSS APPEAL

The Evanses challenge three of the jury instructions given by the trial court. The County's response identifies one of the trial court's instructions and its refusal to give three of the County's proposed instructions that it asks us to address in the event of reversal. The trial court's instructions on the County's duty, proximate cause, and superseding clause are set forth in an appendix, along with the three instructions proposed by the County that the court refused to give.

After an introduction to the instructional issues, we turn first to the Evanses' challenge to instruction 21, the giving of which we hold was reversible error. Given the need for a new trial, we then address the six remaining instructional challenges.

---

[5] American Association of State Highway Transportation Officials.

THE INSTRUCTIONAL BACKDROP: THE PARTIES' THEORIES

With the Evanses' theory of liability based on the 2010 road standards having

been dismissed, they were left with liability premised on general negligence. The parties

disagreed in part on the law and the elements the Evanses needed to prove, and to a

greater extent on how the jury should be instructed.

Under the common law, the County owes the traveling public "a duty to maintain

its roadways in a reasonably safe condition for ordinary travel by persons using them in a

proper manner." *Ruff v. King County*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995). The

duty is generally conditional, however, "aris[ing] only when the [County] has notice of,

and time to correct, the hazard in question." *Leroy v. State*, 124 Wn. App. 65, 68-69, 98

P.3d 819 (2004) (citing *Wright v. City of Kennewick*, 62 Wn.2d 163, 167, 381 P.2d 620

(1963)). The County "must have (a) notice of a dangerous condition which it did not

create, and (b) a reasonable opportunity to correct it before liability arises for negligence

from neglect of duty to keep the streets safe." *Niebarger v. City of Seattle*, 53 Wn.2d

228, 229, 332 P.2d 463 (1958).

Notice of the dangerous injury-causing condition can be either actual or

constructive. *Albin v. Nat'l Bank of Com. of Seattle*, 60 Wn.2d 745, 748, 375 P.2d 487

(1962). To prove constructive notice, plaintiffs must show the specific unsafe condition

had "'existed for such time as would have afforded [the defendant] sufficient

opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.'" *Iwai v. State*, 129 Wn.2d 84, 96, 915 P.2d 1089 (1996) (quoting *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 44, 666 P.2d 888 (1983)).

"[T]he notice requirement does not apply to dangerous conditions created by the governmental entity or its employees or to conditions that result from their conduct." *Nguyen v. City of Seattle*, 179 Wn. App. 155, 165, 317 P.3d 518 (2014) (citing *Batten v. S. Seattle Water Co.*, 65 Wn.2d 547, 550-51, 398 P.2d 719 (1965)). It also does not apply where "the danger was one [the governmental entity] should have foreseen and guarded against." *Albin*, 60 Wn.2d at 748; *Nguyen*, 179 Wn. App. at 165; *Argus v. Peter Kiewit Sons' Co.*, 49 Wn.2d 853, 860-61, 307 P.2d 261 (1957)). In that instance, "[t]he question of foreseeability goes to the question of whether the defendant owed a duty of care to the plaintiff." *Nguyen*, 179 Wn. App. at 165 (citing *Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969)).

The parties agreed that the direct cause of injury was the tree falling on Mr. Evans, in his car. They agreed that the wind was a proximate cause of the tree falling and that without the wind the tree would not have fallen. They disagreed on whether the County's negligence was a concurring cause. The County contended that the wind was the sole proximate cause of the accident because the County was not negligent, or if it was negligent, the wind was a superseding cause.

STANDARD OF REVIEW

"We review the court's choice of jury instructions for abuse of discretion." *State v. Butler*, 165 Wn. App. 820, 835, 269 P.3d 315 (2012). "We review [the legal accuracy of] jury instructions de novo, and an instruction containing an erroneous statement of the law is reversible error where it prejudices a party." *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 635, 244 P.3d 924 (2010). "Jury instructions are sufficient if they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied." *Id*. (internal quotation marks omitted) (quoting *Hue v. Farmboy Spray Co*., 127 Wn.2d 67, 92, 896 P.2d 682 (1995)). "The party challenging an instruction bears the burden of establishing prejudice." *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015).

A.    THE EVANSES' INSTRUCTIONAL CHALLENGES

1.    Instruction 21:  No Liability for Merely Foreseeable or Probable Unsafe Conditions

Instruction 21 told the jury:

The county cannot be negligent if it only knew that an unsafe condition might, or even probably will, develop.

CP at 4256.  The County requested the instruction.  The trial court's instruction was slightly and immaterially modified.  *Compare* CP at 4136 *with* CP at 4256.

Instruction 21 is not a pattern instruction.  The County based it on *Laguna*, 146 Wn. App. at 265, and *Fuda v. King County*, an unpublished decision in which an

17

instruction based on *Laguna* was only challenged as inapplicable, not incorrect or incomplete.[6]  The Evanses objected to the instruction, pointing out that there is no such pattern instruction and the facts in this case are unlike the facts in *Laguna*.  They argued that in *Laguna* there was no evidence the defendants created the condition and the case dealt with actual, not constructive, notice.  They argued that giving the instruction on such disparate facts could be confusing.

In *Laguna*, the plaintiffs contended the Washington State Department of Transportation (DOT) had a duty to de-ice Interstate 90 (I-90) and its failure to do so proximately caused an icy spinout and collision.  Their claim was dismissed on summary judgment.  The summary judgment record showed that DOT employees had actual knowledge that black ice was likely to form in the area due to "personally observ[ing] below-freezing air and ground temperatures and a dense and 'leaking' fog, conditions they testified led them to apply anti-icing chemicals to [other] parts of the roadway." *Laguna*, 146 Wn. App. at 264.  But the employees had no actual knowledge of black ice on this particular stretch of I-90.  Furthermore, although the weather conditions were likely to produce black ice, that likelihood was not a guarantee, as "the same conditions that produced ice before the accident had prevailed for days beforehand, without ice

---

[6] *See Fuda*, No. 74033-4-I, slip op. at 16 (Wash. Ct. App. Oct. 9, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/740334.pdf.

formation. Unfortunately, weather forecasts cannot pinpoint when or where ice will form, and it can form within minutes." *Id*. at 265.

Finding no evidence of actual knowledge, this court turned to the plaintiffs' alternative argument that "the State had a duty to act because the facts known to it made the formation of ice foreseeable." *Id*. The court rejected that argument by noting that "foreseeability of harm does not create a duty to prevent it." *Id*. (citing *Halleran v. Nu West, Inc*., 123 Wn. App. 701, 717, 98 P.3d 52 (2004)). Not stopping there, the court went on to state:

> There is a difference between liability based on knowledge that a dangerous condition actually exists and knowledge that a dangerous condition might, or even probably will, develop. No Washington case has held that the State has a duty to act when weather conditions exist that are likely, or even certain, to produce icy roads.

*Id*. It is this language on which the County based its proposed instruction.

Aside from being dicta, the problem with this language from *Laguna* is that it is an inaccurate statement of the law, or, at best, incomplete. *Halleran*, the case cited for authority in *Laguna*, merely recited the well-settled principle that foreseeability informs duty but does not by itself create a duty. *See Halleran*, 123 Wn. App. at 717; *and* n.27.

In fact, the common law *does* impose a duty not only to correct existing dangerous conditions but also to prevent, mitigate, and guard against reasonably foreseeable conditions that may develop. In *Albin* the Washington Supreme Court held, "A county's

19

liability to the users of its roads is predicated upon its having notice, either actual or constructive, of the dangerous condition which caused injury, *unless the danger was one it should have foreseen and guarded against*." 60 Wn.2d at 748 (emphasis added). In *Nguyen*, this court said, "[I]f it was a condition that the governmental entity *should have anticipated*, the plaintiff need not prove notice." 179 Wn. App. at 166 (emphasis added). In *Argus* our Supreme Court held:

> The contractor was under a duty to observe ordinary care to maintain the detour in a condition which would be safe for public travel. *This duty involved the anticipation of defects* which would result from the natural and ordinary use of the detour by vehicular traffic. *The contractor could not stand by passively until a defect or dangerous condition developed and an accident occurred, and thereafter escape liability because there had been no actual or constructive knowledge or notice of the specific defect or the dangerous condition*; *i.e.*, that the contractor did not foresee, and legally should not be held to the duty that he should have foreseen, the accident.

49 Wn.2d at 860-61 (Finley, J., concurring) (emphasis added) (citing *Dillabough v. Okanogan County*, 105 Wash. 609, 178 P. 802 (1919); 25 AM. JUR. *Highways* § 446, at 738 (1940)).

This well settled Washington law is reflected in bracketed language in the Washington pattern jury instruction on "Sidewalks, Streets, Bridges and Roads—Notice of Unsafe Condition," an instruction to be used in cases against governmental entities. *See* 6 WPI 140.02, at 836 (7th ed. 2019). The pattern instruction informs jurors of a general need for the jury to find that a governmental entity had notice of an unsafe condition. A bracketed qualifier states that the need for notice does not apply to "a

condition which [the entity's] employees or agents should have reasonably anticipated would develop." *Id.* The bracketed language would have been appropriate in this case, since it was a theory previously argued by the Evanses.[7]

The trial court's instruction 18 was a modified version of WPI 140.02 proposed by the County. The County's proposal did not include the bracketed language. The County argues that the Evanses did not object to the omission of the bracketed language from instruction 18, which is true. But it appears that due to an unusual twist in finalizing the instructions, the Evanses were not afforded the opportunity.

Both parties had proposed a version of WPI 140.02: the Evanses' proposed version, P-9, included the bracketed language; the County's proposed version, D-15, did not. The trial court realized while taking objections and exceptions to its final instructions that it had not included WPI 140.02, as had been its intent, and told the parties:

> [T]here should have been an instruction crafted after P-9, Plaintiffs' 9 and D-15, Defense 15, which reflects the 140.02 from WPI. So that will be inserted as new Instruction 18.

Report of Proceedings (RP(W)) at 1335-36.[8] The Evanses argue on appeal, and it

---

[7] In addition to including the bracketed language in their proposed instruction P-9, the Evanses had argued in their summary judgment briefing that notice was not required when a municipality should have anticipated the condition would develop. *See* CP at 1469.

[8] Relevant proceedings were transcribed by several court reporters and appear in our record in separately paginated reports. We cite to only one of the reports, the report

21

appears to be correct, that after the trial court prepared new instruction 18, it did not

provide the Evanses with an opportunity to object as required by CR 51(f). We presume

that the trial court did not notice that the parties' proposed versions of WPI 140.02

differed. And it appears that the Evanses overlooked that instruction 18 was not the

version they had proposed when it was read to jurors.

In a case like *Laguna* that presents only a government failure to respond to a

nonpreexisting, quickly developing hazard, the giving of an instruction like instruction 21

might not be error.[9] In a case like this, involving a preexisting defect that jurors might

perceive as evolving into an "unsafe condition," the instruction is misleading and

contrary to Washington law.

The County argues that instruction 21 presents no problem because other

instructions allowed the Evanses to argue their theories to the jury. But the Evanses'

concern is that the erroneous instruction "allowed the jury to misapply the law." *Falk v.*

*Keene Corp.*, 113 Wn.2d 645, 656, 782 P.2d 974 (1989).

---

of eight trial days (October 15-17 and 22-26) reported by Amy Wilkins, whose report we
refer to as RP(W).

[9] The result in *Laguna* is correct, because the law requires the government to have
a reasonable opportunity to act, which it did not have in *Laguna*. 146 Wn. App. at 263.
In the realm of de-icing, where the ice can form quickly and without warning and where
the remedy is time-sensitive and must be applied in close temporal proximity to the
hazard (lest the de-icer wash away without effect) a jury could reasonably conclude that
the government is not negligent for failing to de-ice a road.

Because the instruction is an erroneous statement of the law, "prejudice is presumed and is grounds for reversal unless it can be shown that the error was harmless." *Fergen*, 182 Wn.2d at 803. The County argues that the error was not prejudicial by pointing to the Evanses' closing argument, in which they sought to persuade jurors that instruction 21 did not apply to the County's omission. A party having to contend with an objected-to misstatement of the law will understandably try to argue around it. Trying to argue around an erroneous instruction does not negate the instructional error or cure any prejudice.

More compelling in evaluating prejudice is the County's closing argument in which, drawing jurors' attention to instruction 21 as "important," the County's lawyer was able to argue that the Evanses failed to present evidence that the County had notice "that this specific tree was going to fall on this specific road on this specific day at this specific time." RP(W) at 1394. In a case that jurors might find close (and two jurors disagreed with the verdict), instruction 21 could have provided the simplest route to a verdict. But the law did not require the Evanses to present the proof argued by the County. The verdict must be reversed and the case remanded for a new trial.

2. Instruction 13: Superseding Cause

Instruction 13 provided the definition of "superseding cause" set forth in WPI 15.05 and told jurors that an unforeseeable independent cause can supersede a defendant's negligence, such that the defendant's negligence is not a proximate cause of

23

injury.[10]  The County proposed giving the instruction and the Evanses objected.  Among other bases for their objection, they argued (pointing to the comments to WPI 15.05) that if strong winds were within the ambit of the hazards covered by the duty imposed upon the County, they were foreseeable and do not supersede the County's negligence.

The County argues on appeal that if it was error to give the instruction, the error was harmless because the jury found no negligence, never reaching the issue of causation.  We agree.  It was error, however, and in a retrial could be reversible error. *E.g.*, *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 812-13, 733 P.2d 969 (1987); *Albertson v. State*, 191 Wn. App. 284, 361 P.3d 808 (2015).

If the County's evidence was accepted by the jury, the winds on the afternoon of the accident included an unforeseeably strong wind gust of 68 to 70 m.p.h.[11] with an approximately 1 percent chance of occurring during any given year.  In addition, the County's expert arborist testified that the tree was healthy, and that healthy trees normally do not snap in winds less than 64 m.p.h.  Foreseeability informs duty, so this evidence was relevant to the County's position that it was not negligent.

---

[10] The instruction defined "superseding cause" as "a new independent cause that breaks the chain of proximate causation between a defendant's negligence and an injury." CP at 4247.  The full instruction is set forth in the appendix.

[11] Wind gust is a meteorological term of art.  "A sustained wind is when it's averaged over a one-minute period.  A wind gust . . . is a movement of the air over a five-second period.  So you can have a sustained wind with stronger wind gusts within that one-minute period." RP(W) at 485.  The County's expert opined that the sustained speeds were normal, but the gusts were not.

24

When it comes to instructing on causation, however, an instruction on superseding cause would be applied by the jury only if it found the County *was* negligent. Even if we accept the County's position on what was and was not foreseeable, for a diseased tree that the County fails to remove to snap in strong winds (for example, a 50 to 63 m.p.h. wind) was within the ambit of the hazards covered by the County's duty.

An observation by Professor Harper that our high court quoted with approval in both *Berglund v. Spokane County*, 4 Wn.2d 309, 319-20, 103 P.2d 355 (1940), and *McLeod v. Grant County School District No. 128*, 42 Wn.2d 316, 321-22, 255 P.2d 360 (1953), is apt:

> [T]here can be no liability where the harm is unforeseeable, if "foreseeability" refers to the general type of harm sustained. It is literally true that there is no liability for damage that falls entirely outside the general threat of harm which made the conduct of the actor negligent. The sequence of events, of course, need not be foreseeable. The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of legal causation are present.

FOWLER VINCENT HARPER, A TREATISE ON THE LAW OF TORTS § 7, at 14-15 (1933).

Prosser and Keeton made the same observation about foreseeable results of unforeseeable causes. Describing a "well-known case" in which a defendant negligently failed to clean residue out of an oil barge, leaving it full of gas that exploded not as a result of a foreseeable flame or spark, but when *struck by lightning*, they explained:

25

In such a case, the result is within the scope of the defendant's negligence. The defendant's obligation to the plaintiff was to protect the plaintiff against the risk of such an accident. It is only a slight extension of this responsibility to hold the defendant liable when the danger created is realized through external factors which could not be anticipated. . . .
. . . [T]he rule, stated to be well settled, [is] that if the result is foreseeable, the manner in which it is brought about need not be, and is immaterial.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 44, at 316-17

(5th ed. 1984). In this case, of course, even if we accept the testimony of the County's

experts, the wind that caused the Evanses' injuries was unforeseeable not in type, but

only in degree.

Section 442B of the *Restatement (Second) of Torts (1965)*, to which Washington

courts have looked in addressing the application of superseding cause[12] is in accord,

providing:

Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

---

[12] Washington courts have regularly looked to relevant provisions of the *Restatement (Second) of Torts* (AM. L. INST. 1965), including § 442B and related § 435(1). *E.g.*, *Herberg v. Swartz*, 89 Wn.2d 916, 928, 578 P.2d 17 (1978) (citing §§ 442-45); *Campbell*, 107 Wn.2d at 812-13 (citing, among other provisions, § 442); *McLeod*, 42 Wn.2d at 321; *Wells v. City of Vancouver*, 77 Wn.2d 800, 807, 467 P.2d 292 (1970) (Finley, J., concurring) (citing § 435); *Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wn. App. 432, 445, 739 P.2d 1177 (1987) (citing § 442B); *Doyle v. Nor-West Pac. Co.*, 23 Wn. App. 1, 7, 594 P.2d 938 (1979).

26

Comment *b* to the section states:

> If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate. This is true not only where the result is produced by the direct operation of the actor's conduct upon conditions or circumstances existing at the time, but also where it is brought about through the intervention of other forces which the actor could not have expected, whether they be forces of nature, or the actions of animals, or those of third persons which are not intentionally tortious or criminal. This is to say that any harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always "proximate," no matter how it is brought about, except where there is such intentionally tortious or criminal intervention, and it is not within the scope of the risk created by the original negligent conduct.

Because the risk that a diseased tree would snap in strong winds was within the ambit of the hazards covered by the County's duty, a stronger-than-expected wind is not a cause that will supersede County negligence. It was error to give the instruction, albeit harmless error in the trial below given the nature of the jury's verdict.

### 3. Instruction 14: Act of God

The County also requested instruction 14, a nonpattern instruction defining an "act of god." CP at 2966. Among the bases on which the Evanses challenge the instruction on appeal is that "[g]enerally, the proper constraining principle on the scope of a duty of care is foreseeability" and the trial court's instructions on the County's duty of care (instructions 11, 18 and 19) would have allowed the County to argue that protecting

travelers from hazards presented by unforeseeably strong winds was beyond its duty of ordinary care. Br. of Appellants at 28.

The County contends that this objection to instruction 14 was not raised by the Evanses during the instruction conference, but as the Evanses point out, their written CR 50(a) motion to dismiss the County's "act of God" defense had been argued the day before that conference. In addition to arguing that the County's evidence established at most that the strong winds on the day of the accident were only an infrequent or unusual event, not an unforeseeable one, the Evanses argued that "[t]he 'act of God' defense is not a defense of proximate cause." CP at 4165. The Evanses argue that during the instruction conference, the parties and the trial court had the prior day's motion argument in mind. We agree; the record suggests that when the trial court heard the CR 50(a) motion it was thinking ahead to the next day's instruction conference and when the instruction conference was held, the trial court commented on having reviewed the case law addressed in argument the prior day. The record shows "the trial court manifested an understanding of the [objecting party's] position." *Washburn v. City of Federal Way*, 178 Wn.2d 732, 748, 310 P.3d 1275 (2013).

The County characterized its "act of God" instruction as based on *Wells v. City of Vancouver*, 77 Wn.2d 800, 804, 467 P.2d 292 (1970) and *Sado v. Spokane*, 22 Wn. App.

298, 302 n.5, 588 P.2d 1231 (1979).[13] CP at 2966. But the County's instruction is

different from the instructions in *Wells* and *Sado*, both of which addressed the

unforeseeability of a natural phenomenon in deciding the issue of a defendant's *duty of*

*ordinary care*, not proximate cause. The instruction in *Wells* stated:

> One who is under a duty to protect others against injury cannot escape
> liability for injuries to the person or property of such others on the ground
> that it was caused by an act of God, unless the natural phenomenon which

---

[13] No Washington decision (including *Wells* and *Sado*) has squarely addressed whether or how a trial court should instruct a jury on a defendant's contention that an injury was caused by an act of God.

In *Wells*, after the jury in that personal injury case returned a verdict for the plaintiff, the defendant assigned error to the trial court's denial of its motion for a directed verdict on its act of God defense. 77 Wn.2d at 802. It was in that context that the Supreme Court mentioned the instruction on acts of God that had been given to the jury. *Id*. at 803. The propriety of the instruction was not challenged or considered by the court.

In *Sado*, several properties were damaged when Latah Creek flooded and upstream property owners sued the city of Spokane, contending its settling pond altered the creek and made it more susceptible to flooding. The city defended on an act of God theory. 22 Wn. App. at 299-300, 302. The plaintiffs prevailed, and the city assigned error to the trial court's decision to give the plaintiffs' preferred act of God instruction over the defendant's requested version. *Id*. at 302-03. In affirming the trial court's choice of instructions, this court erroneously characterized the plaintiffs' instruction as almost verbatim an instruction "approved" in *Wells*. *Id*. at 303-04. Because this court assumed *Wells* had approved the instruction, it did not examine the instruction further.

The current *Restatement* suggests that instruction on "acts of God" may not be necessary:

> [C]ases involving serious and unusual adverse natural events—"acts of
> God"—essentially call for application of the factors that enter into an
> ordinary analysis of negligence. Accordingly, so long as the jury is
> instructed on the basic elements of negligence and causation, a separate
> instruction on act of God may not be necessary.

RESTATEMENT (THIRD) OF TORTS: PHYSICAL & EMOTIONAL HARM § 3 cmt. *l* (2010).

caused the injury was so far outside the range of human experience *that ordinary care did not require that it should be anticipated or provided against*, and it is not sufficient that such phenomena are unusual or of rare occurrence.

77 Wn.2d at 803 (emphasis added). A principal point of the decision in *Wells* was that foreseeability, while useful in determining the limits of the defendant's duty and the reasonableness of the defendant's conduct "is not appropriately considered as part of the causation issue." *Id.* at 802.

By contrast, the trial court's instruction 14 in this case is geared toward causation. Its directive to jurors is its final sentence, which states:

If you find from the evidence that the defendant has proved that an "act of God" was the sole proximate cause of the plaintiffs' injuries and damages, then the plaintiffs cannot recover.

CP at 4248. At best, this simply restates the directive of instruction 12 that "if you find that the sole proximate cause of injury or damage to the Plaintiffs was some [force other than defendant's negligence] then your verdict should be for the defendant," CP at 4246—although it emphasizes the proximate cause being urged by the County. At worst, the instruction could be understood by jurors as another superseding cause instruction, which we have held should not have been given.

Significantly, instruction 14 combines its directive on causation with an opening sentence that addresses foreseeability as a constraining principle on the scope of the duty

of care. Washington cases hold that instructions that connect concepts of foreseeability to proximate cause are confusing and improper. *Blodgett v. Olympic Sav. & Loan Ass'n*, 32 Wn. App. 116, 119, 646 P.2d 139 (1982) (citing *Rikstad*, 76 Wn.2d at 268). While the instruction was harmless since the jury did not reach the issue of proximate cause, it was a confusing and improper instruction and should not have been given.

> B.     THE COUNTY'S INSTRUCTION CHALLENGES

> 1.  Instruction 19:  Premises Liability

After rejecting a nonpattern instruction that the Evanses proposed on the County's duty as a possessor of land (i.e., the right-of-way), the trial court crafted its own instruction 19. It stated that it relied on *Lewis v. Krussel*, 101 Wn. App. 178, 187, 2 P.3d 486 (2000), and *Iwai*, 129 Wn.2d at 96, two cases cited by the Evanses as support for their own proposed instruction. Instruction 19 states:

> A possessor of land who has actual or constructive knowledge of dangerous conditions on the land has a duty to take action to correct the dangerous condition or warn of its existence. A possessor's duty attaches if the landowner knows or by the exercise of reasonable care should know of the condition and should realize that it involves an unreasonable risk. If the possessor of land caused the dangerous condition, then knowledge is established.

CP at 4253. The County objected to the instruction, arguing that premises liability does not apply in road cases.

The County's sole authority for its position that premises liability does not apply in road cases is *Nguyen*. In *Nguyen*, the plaintiff sued the city of Seattle for failing to

31

trim a tree whose branches extended into the roadway, causing damage when a rental

truck Nguyen was driving struck them. 179 Wn. App. at 158. The tree was in a planter

strip maintained but not owned by the city. *Id*. at 160. Among other contentions,

Nguyen argued the city had a common law duty to inspect its trees as a possessor of land

adjacent to the roadway. *Id*. at 171.

> Division One of this court rejected that argument, observing that Nguyen
>
> cites no authority supporting his assertion that "[f]or the limited purpose of
> the trees the City has planted, [it] assume[s] the role of possessor of land
> adjacent to a public roadway." Appellant's Br. at 22. *See State v. Logan*,
> 102 Wn. App. 907, 911, 10 P.3d 504 (2000) ("'Where no authorities are
> cited in support of a proposition, the court is not required to search out
> authorities, but may assume that counsel, after diligent search, has found
> none.'") (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126,
> 372 P.2d 193 (1962)).

179 Wn. App. at 171 (alterations in original). The court concluded by saying that "[t]he

City's duty to persons using public roads derives from its status as a municipality, not as

a landowner," *id.* at 172, but it offered no authority for that conclusion.

We may assume that no authority exists when a party fails to cite to any. *E.g.*,

*Or. Mut. Ins. Co. v. Barton*, 109 Wn. App. 405, 418, 36 P.3d 1065 (2001). That does not

mean, however, that the law is the converse. It simply means that the party with the

burden of proof and persuasion has failed to meet that burden. The law remains

undecided, absent reasoned argument or evidence to the contrary.

Contrary to *Nguyen*, Washington law imposes premises liability on possessors of land adjacent to roadways. In *Albin*, the Supreme Court suggested that a sliding scale of duty applies to owners and possessors of land adjacent to public roads, with the duty being highest in urban corridors, reduced in rural areas, and almost nonexistent in remote areas. 60 Wn.2d at 750-51. Notably, *Albin* involved the duty specific to trees and created an exception for remote areas, where liability could attach if the forested land was no longer "in its natural state" due to actions of the owner. *Id*. at 751-52.[14]

While *Albin* did not resolve whether this same common law duty applies to the government, the legislature has: "All local governmental entities, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct . . . to the same extent as if they were a private person or corporation." RCW 4.96.010(1). The legislature's waiver of sovereign immunity requires us to treat the County the same as if it were any other possessor of land.

In its reply, the County argues that premises liability cannot attach to easement holders because they are not "possessors" of land. It cites cases stating that an easement is a "nonpossessory" right to use land. Reply Br. of Cross Appellant Spokane County

---

[14] In *Albin*, Columbia County was a co-defendant, but it does not appear the plaintiff sought to hold the County liable on a premises liability theory. The tree was 23 feet outside of the right-of-way. *Id*. at 758 (Foster, J., concurring and dissenting in part).

at 7. But the cases it cites have nothing to do with premises liability, negligence, or torts

for personal injury; they concern adverse possession, vacation, and title disputes.

Contrary to the County's position, Washington has long held that an easement is a

"possessory" right in the premises liability context. In *Mills v. Orcas Power & Light Co.*,

56 Wn.2d 807, 817-19, 355 P.2d 781 (1960), a utility company, holding only a license to

erect telephone and power poles in the right-of-way along a highway, was held to owe a

duty of care to warn of a dangerous condition created by the condition of its lines. In

support of its holding, our Supreme Court relied on out-of-state cases and treatises

imposing liability in the same context present here:

> The imposition of such duties . . . is also in conformity with the well-settled common-law principle that one must exercise reasonable care to maintain his property so as not to injure those using the adjacent highway.

*Id.* at 818-19 (citing *Latzoni v. City of Garfield*, 22 N.J. 84, 123 A.2d 531 (1956); *Sinclair*

*Tex. Pipe Line Co. v. Ross*, 175 Okla. 435, 54 P.2d 204 (1936); *White v. Suncook Mills*,

91 N.H. 92, 13 A.2d 729 (1940); WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF

TORTS § 75, at 427-28 (2d ed. 1955); 65 C.J.S. *Negligence* § 77, at 573 (1950)).

The trial court did not err by instructing on premises liability.[15]

---

[15] The County does not challenge the *language* of instruction 19. A land possessor's duty may vary depending on the natural or artificial nature of the hazard and whether the hazard exists in an urban or rural setting, although the significance (or not) of the latter is evolving. *See, e.g.*, *Albin*, *Mills*, *Lewis*, and *Price v. City of Seattle*, 106 Wn. App. 647, 24 P.3d 1098 (2001); *see also* WPI 135.01 and RESTATEMENT (THIRD) OF TORTS: PHYSICAL & EMOTIONAL HARM § 54 cmt. *c* (2012). In *Price*, the

2. Proposed Instruction D-19: No Duty to Inspect

The County asked the trial court to instruct the jury that "[t]he county's duty does not require it to inspect roadside trees for defects." CP at 2625 (Proposed Instruction D-19). The County based the instruction on *Nguyen* and *Fuda*. The trial court declined to give the instruction, explaining that it viewed the proposed instruction as an "overly narrow" reading of the law, adding:

> The county in the event that they know that activities that they are undertaking pose a significant risk to creating such a hazard, I think do, in fact, have an obligation to inspect roadside trees, and they're out there undertaking such activity.

RP(W) at 1335.

The trial court was correct. While the law does not impose an across-the-board duty to inspect, such a duty may arise under *Albin* where an owner or possessor of premises takes the trees out of their natural condition such that the premises become an artificial condition. As *Albin* implies, it might be that the law imposes a broader duty to inspect in other circumstances, such as in urban settings.

The proposed instruction as drafted was also misleadingly overbroad by conceivably negating constructive notice. Constructive notice exists when "the condition

---

court was not persuaded that the duty of a landowner with respect to the danger presented by a landslide-prone slope is, or should be, the same as the duty of a landowner with respect to defective trees. 106 Wn. App. at 655-56.

existed for a sufficient length of time and under such circumstances that its employees or agents should have discovered the condition in the exercise of ordinary care." CP at 4252 (Instruction 18). If no duty to inspect exists, then a jury could be confused into thinking that liability can only attach for actual, and not constructive, notice.

The County's reliance on *Nguyen* as authority for this proposed instruction suffers the same problem as its reliance on *Nguyen* in challenging the trial court's instruction 19: the court in *Nguyen* legitimately rejected an argument that was unsupported by authority, but it could not rely on the lack of authority to conclude that the law was the opposite. If the court in *Nguyen* had been made aware of *Albin* and *Mills*, it may have ruled differently.[16]

In its reply brief, the County argues that under the law applicable to invitees, it has no duty to "'affirmatively seek out and discover hidden dangers.'" Reply Br. of Cross Appellant Spokane County at 10 (quoting *Memel v. Reimer*, 85 Wn.2d 685, 689, 538 P.2d 517 (1975)). While that is an accurate quotation from *Memel*, it is not the current law. Since *Memel*, the Supreme Court has reaffirmed there is still a duty to inspect for and discover dangers: "Reasonable care requires the landowner to inspect for dangerous conditions. . . . The trial court correctly instructed the jury on these duties." *Tincani v.*

---

[16] The County also cites *Fuda v. King County.* But in holding that the jury was properly instructed that King County had no duty to inspect its street infrastructure, the *Fuda* court relied solely on *Nguyen. Fuda*, No. 74033-4-I, slip op. at 16-17.

*Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 139, 875 P.2d 621 (1994) (discussing

and adopting RESTATEMENT (SECOND) OF TORTS § 343 cmt. b). Accordingly, the

County's proposed instruction D-19 was an inaccurate statement of the law even with

respect to the duty owed to invitees.

> 3. Proposed Instructions D-27 and D-28: Constructive Knowledge

The County asked the trial court to instruct the jury that any duty to mitigate

dangerous trees is limited to trees with defects identifiable by a layperson. It provided

two instructions, D-27 and D-28, both of which it characterized as supported by *Lewis*

and by the unpublished opinion in *Gaona v. Glen Acres Golf & Country Club*, No.

71022-2-I, slip op. at 8 (Wash. Ct. App. Nov. 17, 2014) (unpublished), https://www

.courts.wa.gov/opinions/pdf/710222.pdf.

In *Lewis*, homeowner Lewis and her co-owner, Teitzel, sued the Krussels, owners

of an adjacent home, after two large hemlock trees on the Krussel property fell over

during a windstorm, damaging the roof of the Lewis/Teitzel home. Summary judgment

was granted in the Krussels' favor because there was no evidence they had any reason to

believe that the trees that fell posed a hazard. 101 Wn. App. at 179. Lewis and Teitzel

argued on appeal that because the Krussels had notice that other hemlock trees on their

property had fallen, they had a duty to remove the two apparently healthy trees. *Id.*

In affirming summary judgment in the Krussels' favor this court stated that

"[a]ctual or constructive notice of a 'patent danger' is an essential component of the duty

of reasonable care." *Id.* at 186. The court also cited foreign cases whose reasoning it characterized as "consistent with *Albin*, the only authority in this State." *Id*. at 187. Among the reasoning that it characterized as consistent with *Albin* were statements in the cited decisions that "there is no duty to consistently and constantly check all pine trees for non-visible rot as the manifestation of decay must be visible, apparent, and patent so that one could be aware that high winds might combine with visible rot and cause damage" and an alleged defect must be "readily observable" so that the landowner can take appropriate measures to abate the threat. *Id.* (internal quotation marks omitted) (quoting *Cornett v. Agee*, 143 Ga. App. 55, 237 S.E.2d 522, 524 (1977); *Ivancic v. Olmstead*, 66 N.Y.2d 349, 488 N.E.2d 72, 497 N.Y.S.2d 326 (1985)).

*Gaona* cites *Lewis*'s holding on this score but turned more significantly on the failure of the plaintiff, an invitee, to present evidence that Glen Acres should expect that its landscaping firm and the firm's employees would not discover or realize the danger from a tree or fail to protect themselves against it. *Gaona*, slip op. at 6 (citing RESTATEMENT (SECOND) OF TORTS § 343(b)). The plaintiff, who was struck by a willow tree while mowing the lawn at the Glen Acres golf course and condominium development, was employed by the landscaping firm that provided tree care and inspection services to Glen Acres. *Gaona*, slip op. at 2.

Relying on these two decisions, the County proposed the following instructions:

> A patently dangerous tree, or one with a readily observable defect, must be the type of defect or deficiency in a tree that does not require professional training or an arborist to discern.

CP at 4134 (Proposed Instruction D-27), and

> The county has a duty to take corrective action with respect to a roadside tree only if it has notice of a patent danger that is readily observable to a layperson. The county's duty does not require it to consistently and constantly check for defects in roadside trees and it does not require an arborist's inspection.

CP at 4135 (Proposed Instruction D-28). The trial court declined to give the instructions because it believed the County read too much into *Lewis*.

To say that there must be "notice of a patent danger" and that a defect or disease must be "visible, apparent, and patent" is supported by *Lewis*. *Lewis* also supports stating that there is no duty "to consistently and constantly check trees for non-visible" defects or disease; rather, the defect must be "readily observable." The trial court did not abuse its discretion in concluding that the County could make these arguments from the court's instructions on the duty of care.

*Lewis* does not support the County's desired instruction that any danger be apparent to a layperson. While that might be a fair statement in a case involving a defendant landowner who *is* a layperson, the defendant in this case is a populous county operating an extensive system of roadways. As Prosser and Keeton observe, persons may undertake an activity or stand in a relation to others that imposes on them an obligation to

investigate and find out about dangers unknown to the lay public. KEETON ET AL., *supra*, § 32, at 185. And for those who have acquired knowledge beyond that of an ordinary person in the course of their work, the law will demand conduct consistent with that acquired knowledge. *Id.* Any suggestion that only the standard of an untrained layperson applies would have to be qualified.

Here too, we find no abuse of discretion on the part of the trial court in rejecting the proposed instructions.

III.    WITNESS EXCLUSION

Finally, the Evanses challenge the trial court's decision to completely exclude Mr. Wright and Ms. Gill as witnesses and to limit and sustain objections to the testimony of Mr. Valenta.

Mr. Wright was excluded as a witness as a discovery sanction. The trial court decided after performing the analysis required by *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997), that the Evanses had willfully delayed in disclosing information relied on by Mr. Wright, and that no lesser sanction than excluding him as a witness was available. With our reversal and remand for a new trial, that analysis will necessarily change. It is unnecessary for us to review the decision the trial court made based on the situation existing in October 2018.

A.    James Valenta

The Evanses challenge the trial court's exclusion of Mr. Valenta's testimony concerning (1) the County's duty to train employees to identify hazards located within the right-of-way and (2) the County's excess funds in the roads budget that could have been used to mitigate hazards. The trial court sustained numerous objections to Mr. Valenta's testimony, sometimes on the basis that he was unqualified, sometimes on the basis that the opinion was irrelevant, and frequently on the basis that he lacked a factrual foundation for his opinions. Testimony from Mr. Valenta about budgeted funds that could have been spent to mitigate hazards was excluded by the trial court on the basis of legislative or discretionary immunity.

If specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. ER 702. An expert's opinion is admissible if the witness is properly qualified, relies on generally accepted theories, and the expert's testimony is helpful to the trier of fact. *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984). We construe helpfulness to the trier of fact broadly. *Philippides v. Bernard*, 151 Wn.2d 376, 393, 88 P.3d 939 (2004) (citing *Miller v. Likins*, 109 Wn. App. 140, 148, 34 P.3d 835 (2001)).

Trial courts have broad discretion in determining the admissibility of expert testimony under ER 702, and a trial court's decision should not be disturbed absent an

abuse of that discretion. *Myers v. Harter*, 76 Wn.2d 772, 781, 459 P.2d 25 (1969).

Claims of immunity present an issue of law that we review de novo. *Cf. Feis v. King County Sheriff's Dep't*, 165 Wn. App. 525, 538, 267 P.3d 1022 (2011) (qualified immunity).

The trial court sustained the County's objection to Mr. Valenta testifying that the County's 2013 budget surplus could have been spent on training and hazardous tree removal on grounds that the testimony would question discretionarily-immune decision making. Under a judicially-created discretionary governmental immunity exception to the State's waiver of sovereign immunity, "discretionary" governmental acts are immune from tort liability whereas "ministerial" or "operational" acts are not. *Taggart v. State*, 118 Wn.2d 195, 214, 822 P.2d 243 (1992) (internal quotation marks omitted). "The exception has been narrowed in later decisions . . . [to where] the exception's purpose is to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government." *Id*. at 214-15 (citation and internal quotation marks omitted) (quoting *King v. City of Seattle*, 84 Wn.2d 239, 246, 525 P.2d 228 (1974)). We held that the State is immune "only if it can show that the decision was the outcome of a conscious balancing of risks and advantages." *Id*. at 215. In addition, we have said that "discretionary immunity is narrow and applies only to basic policy decisions made by a high-level executive." *Id*.

The Washington Supreme Court in *McCluskey v. Handorff-Sherman*, 125 Wn.2d 1, 12-13, 882 P.2d 157 (1994), hinted that decisions to place projects in the "Priority Array," which is the ranking system used by high-level transportation officials to decide what roads get built, rebuilt, or otherwise significantly overhauled, might be shielded from immunity. Mr. Valenta's testimony would not have involved high level decision-making such as eligibility for the Priority Array; he intended to testify only that the County had budget surpluses in 2013 in both its small works budget and in its engineering training budget and routinely used the small works budget to remove problem trees. The small works budget appears from the record to be a fund to deal with small operational and maintenance problems as they arise.

In his deposition, Chad Coles, the county engineer for Spokane County, testified that the tree removal process was started if a road crew identified a tree as a hazard. The crew would submit a request for investigation, which would cause a supervisor to physically inspect the possible hazard. The supervisor would then decide whether the hazard should be removed, and if so the supervisor would send the project to the person in charge of the small works bidding process. The money was already allocated for relevant purposes; all that was required was for the department to spend it. The process does not require any special budgeting or preapproval from any legislative body.

This case did not present a high-level discretionary act exercised at a truly executive level. *Cf. Taggart*, 118 Wn.2d at 215 (parole officer's decision about which

offenders to supervise involved an exercise of discretion, but not a policy-level decision). Nor did the mere fact that the County had not adopted a written tree removal plan shield its inaction from liability. An action or decision "must actually have been considered and reasoned in order to be entitled to immunity." *McCluskey*, 125 Wn.2d at 12. It was error to rely on discretionary immunity as a basis for excluding Mr. Valenta's testimony. We find it harmless, however, since the County never contended that it lacked money to train employees and identify problem trees.

The Evanses' remaining objection was to the trial court's rulings sustaining objections that Mr. Valenta's testimony lacked foundation. The "lack of foundation" objections sustained were, in substance, objections that the Evanses had not introduced evidence sufficient under ER 104(b) to satisfy the personal knowledge requirement of ER 602.

The trial court's role in determining the adequacy of foundation evidence is a limited one; the trial court determines only whether the proponent has made a prima facie showing that the primary evidence is relevant. ER 104(b); 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 104.7, at 124-25 (6th ed. 2016). That prima facie showing is of course subject to challenge by the opposing party's evidence to the contrary. The question of whether Mr. Valenta testified from personal knowledge would ultimately be decided by the jury after hearing all of the evidence. *See id*.

When it comes to expert witnesses, the trial court will also exclude an opinion that amounts to no more than conjecture or speculation, usually because the court has concluded that the expert is not adequately familiar with the relevant facts and data or because the expert has strayed beyond the area of his or her expertise. 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE at § 702.24, at 107-08 (6th ed. 2016) (citing cases); *see, e.g.*, *Torno v. Hayek*, 133 Wn. App. 244, 250, 135 P.3d 536 (2006) (court properly excluded "future treatment" evidence from physicians who had not seen plaintiff in two and a half years and did not know her current condition); *State v. Richmond*, 3 Wn. App. 2d 423, 431-32, 415 P.3d 1208, *cert. denied*, 191 Wn.2d 1009 (2018) (expert's testimony that effects from methamphetamine use can include increased aggression excluded where expert had never examined defendant and had no basis for assessing how his body would process the drug).

The trial court sustained many objections that Mr. Valenta's testimony lacked foundation. In order to be entitled to review of such evidentiary rulings, the Evanses were required to provide record references for the challenged rulings and provide argument why an adequate foundation *had* been laid. *See* RAP 10.3(6). Instead, they apparently expect us to search the transcript of Mr. Valenta's direct examination for any rulings on a "lack of foundation" with which we disagree. This we will not do.

B.      Joellen Gill

The Evanses argue that contrary to the trial court's ruling excluding Ms. Gill as a witness, her opinion that the County "'lack[ed] an effective safety and risk management program . . . specific to the hazard of trees'" would have been helpful. Br. of Appellants at 47 (alterations in original).

Before offering Ms. Gill's testimony, the Evanses had not presented evidence that implementing a tree risk management program falls within a municipality's standard of care in making its highways safe for travel. County employees had denied that there was any such County program, so there was not a program on whose design she could comment based on her knowledge and experience.

Nor was the testimony necessary to allow the Evanses to argue their point to the jury. As mentioned, the Evanses elicited testimony from several witnesses that the County had no formal policy, training, or program for identifying problem trees. All that Ms. Gill would have added that those witnesses did not already testify to is an explanation of what a good written policy looks like. But as the County correctly points out, the tenets of a good policy are irrelevant where no policy exists in the first place.

Perhaps recognizing that Ms. Gill's testimony was not relevant without first having testimony that there is a duty to have a plan in place, the Evanses also claim that her opinions were relevant to duty: whether the County exercised ordinary care or could have anticipated this accident would occur. The Evanses fail show how Ms. Gill had

knowledge, skill, experience, training or education qualifying her to testify that there is a duty to maintain a written tree risk management policy, however.

Because Ms. Gill's testimony was duplicative and otherwise irrelevant, the trial court did not abuse its discretion excluding it.

In summary:

- The Evanses failed to raise a genuine issue of material fact concerning applicability of the 2010 Road Standards; accordingly, the trial court correctly dismissed the claim on summary judgment;

- The trial court erred as a matter of law by giving instruction 21 (no duty to mitigate foreseeable dangers), and the error was prejudicial, requiring reversal;

- The trial court erred as a matter of law by giving instruction 13 (superseding cause), but the error was harmless;

- The trial court erred as a matter of law by giving instruction 14 (act of God), but the error was harmless;

- We need not review whether the trial court abused its discretion by excluding Timothy Wright as a witness under *Burnet*;

- The trial court erred by limiting Mr. Valenta's proposed testimony about budgeted amounts that could have been spent on training and hazardous tree removal on the basis of legislative or discretionary immunity; we will not review the Evanses' insufficiently briefed assignment of error to the trial court's rulings on objections challenging a lack of foundation;

- The trial court did not abuse its discretion by excluding Joellen Gill as unhelpful to the jury;

- The trial court did not abuse its discretion in giving a premises liability instruction; and

47

- The trial court did not abuse its discretion by refusing to give proposed defense instructions 19, 27 and 28.

We reverse the trial court's judgment on the jury's verdict and remand for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Korsmo, J.

APPENDIX

INSTRUCTION NO. 11

Spokane County has a duty to exercise ordinary care in the maintenance of its public roads to keep them in a reasonably safe condition for ordinary travel.

CP at 4245.

*WPI 140.01 (modified), as proposed by the County. CP at 2620 (D-14). The Evanses' proposed version of WPI 140.01 varied only slightly. CP at 2580 (P-8).*

INSTRUCTION NO. 12

The term "proximate cause" means a cause which in a direct sequence produces the injury complained of and without which such injury would not have happened.

There may be more than one proximate cause of an injury. If you find that the defendant was negligent and that such negligence was a proximate cause of injury or damage to plaintiffs, it is not a defense that some other force may also have been a proximate cause.

However, if you find that the sole proximate cause of injury or damage to the Plaintiffs was some other force then your verdict should be for the defendant.

CP at 4246.

*WPI 15.01 (underscored) and WPI 15.04, combined. The County had proposed using only the underscored language. CP at 2615 (D-9). The Evanses proposed both, as separate instructions. CP at 2586 (P-14), 2587 (P-15).*

INSTRUCTION N0. 13

A superseding cause is a new independent cause that breaks the chain of proximate causation between a defendant's negligence and an injury.

If you find that the defendant was negligent but that the sole proximate cause of the injury was a later independent intervening force that

the defendant, in the exercise of ordinary care, could not reasonably have anticipated, then any negligence of the defendant is superseded and such negligence was not a proximate cause of the injury. If, however, you find that the defendant was negligent and that in the exercise of ordinary care, the defendant should reasonably have anticipated the later independent intervening force, then that act does not supersede defendant's original negligence and you may find that the defendant's negligence was a proximate cause of the injury.

It is not necessary that the sequence of events of the particular resultant injury be foreseeable. It is only necessary that the resultant injury fall within the general field of danger which the defendant should reasonably have anticipated.

CP at 4247.

*WPI 15.05 (modified). Proposed by the County. CP at 2967 (D-26). The Evanses opposed giving the instruction.*

### INSTRUCTION NO. 14

An "act of God" is a natural phenomenon which caused the injury and which is so far outside the range of human experience that ordinary care did not require that it should be anticipated or provided against. Merely because a natural phenomenon is unusual or of rare occurrence is not sufficient to find that such natural phenomenon constituted an "act of God." If you find from the evidence that the defendant has proved that an "act of God" was the sole proximate cause of the plaintiffs' injuries and damages, then the plaintiffs cannot recover.

CP at 4248.

*Wells v. City of Vancouver, 77 Wn.2d 800, 804, 467 P.2d 292 (1970); Sado v. Spokane, 22 Wn. App. 298, 302 n.5, 588 P.2d 1231 (1979). Proposed by the County. CP at 2966 (D-25). The Evanses opposed giving the instruction.*

### INSTRUCTION NO. 18

In order to find a county liable for an unsafe condition of a road that was not created by its employees, you must find that the county had notice

of the condition and that it had a reasonable opportunity to correct the condition.

A county is deemed to have notice of an unsafe condition if the condition has come to the actual attention of its employees or agents, or the condition existed for a sufficient length of time and under such circumstances that its employees or agents should have discovered the condition in the exercise of ordinary care.

CP at 4252.

*WPI 140.02 (modified), as proposed by the County.  CP at 2621 (D-15).  The County's proposed instruction omitted bracketed language in the first paragraph of the pattern instruction that was included in the Evanses' version of WPI 140.02 (CP at 2581 (P-9)), as underlined below:*

> *In order to find a county liable for an unsafe condition of a road that was not created by its employees, <u>and that was not a condition which its employees or agents should have reasonably anticipated would develop</u>, you must find that the county had notice of the condition and that it had a reasonable opportunity to correct the condition.*

INSTRUCTION NO. 19

A possessor of land who has actual or constructive knowledge of dangerous conditions on the land has a duty to take action to correct the dangerous condition or warn of its existence.  A possessor's duty attaches if the landowner knows or by the exercise of reasonable care should know of the condition and should realize that it involves an unreasonable risk.  If the possessor of land caused the dangerous condition, then knowledge is established.

CP at 4253.

*Lewis v. Krussel, 101 Wn. App. 178, 187, 2 P.3d 486 (2000); Iwai v. State, 129 Wn.2d 84, 96, 915 P.2d 1089 (1996) (citing RESTATEMENT (SECOND) OF TORTS § 343); Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 139, 875 P.2d 621 (1994) (citing RESTATEMENT (SECOND) OF TORTS § 343 cmt. b).*

*The County opposed giving the instruction. The Evanses' proposed instruction (CP at 2585 (P-13)) was slightly different:*

> <u>The County here is the property owner/possessor of the right of way, where the subject tree was.</u> A possessor of land who has actual or constructive knowledge of <u>defects affecting its trees</u> has a duty to <u>take corrective action.</u> A possessor's duty attaches <u>only</u> if the landowner knows or by the exercise of reasonable care <u>would discover the condition</u> and should realize that it involves an unreasonable risk.
> <u>Reasonable care requires the possessor of land to inspect for dangerous conditions, followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.</u>

(Alteration in original.)

INSTRUCTION NO. 21

The county cannot be negligent if it only knew that an unsafe condition might, or even probably will, develop.

CP at 4256.

*Laguna v. State, 146 Wn. App. 260, 265, 192 P.3d 374 (2008); see also Fuda v. King County, No. 74033-4-I, (Wash. Ct. App. Oct. 9, 2017) (unpublished), https://www.courts .wa.gov/opinions/pdf/740334.pdf (upholding similar jury instruction) (unpublished case cited in accordance with GR 14.1 allowing the court to accord "such persuasive value as the court deems appropriate"), as proposed by the County. CP at 2626 (D-20). The Evanses opposed giving the instruction.*

## INSTRUCTIONS PROPOSED BY THE COUNTY BUT NOT GIVEN

PROPOSED INSTRUCTION NO. D-19

The county's duty does not require it to inspect roadside trees for defects.

CP at 2625.

*Nguyen v. City of Seattle, 179 Wn. App. 155, 171-72, 317 P.3d 518 (2014); see also Fuda, No. 74033-4-I (upholding jury instruction stating that a municipality has no duty to inspect its roadways) (unpublished case cited in accordance with GR 14.1 allowing the court to accord "such persuasive value as the court deems appropriate").*

### PROPOSED INSTRUCTION NO. D-27

A patently dangerous tree, or one with a readily observable defect, must be the type of defect or deficiency in a tree that does not require professional training or an arborist to discern.

CP at 4134.

*Gaona v. Glen Acres Golf & Country Club, No. 71022-2-I, slip op. at 7-8 (Wash. Ct. App. Nov. 17, 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/710222.pdf (citing Lewis, 101 Wn. App. at 186-87).*

### PROPOSED INSTRUCTION NO. D-28

The county has a duty to take corrective action with respect to a roadside tree only if it has notice of a patent danger that is readily observable to a layperson. The county's duty does not require it to consistently and constantly check for defects in roadside trees and it does not require an arborist's inspection.

CP at 4135.

*Lewis, 101 Wn. App. at 186-87; Gaona, No. 71022-2-I, slip op. at 7-8.*